IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ARCH COAL, INC., | ) | |
| Plaintiff, | ) ) ) | Case No. _____ |
| v. | ) ) | |
| THOMAS PEREZ, SECRETARY, LABOR and UNITED STATES DEPARTMENT OF LABOR, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## **COMPLAINT**

1.     This is an action brought by Arch Coal Inc. ("Arch Coal") against the Secretary, United States Department of Labor and the United States Department of Labor seeking declaratory and injunctive relief from the Department of Labor's final agency action violating the mine operator liability provisions of the Black Lung Benefits Act, 30 U.S.C. §§ 901-945 ("BLBA"), and implementing regulations, and the rulemaking provisions of the Administrative Procedure Act, 5 U.S.C. §§ 551-559 ("APA").

**2.**     This dispute arises following the liquidation in bankruptcy of Patriot Coal Corporation ("Patriot") and challenges the Department of Labor's efforts to impose liability for Patriot's federal black lung claims on Arch Coal.  This lawsuit does not affect any claimant's entitlement to benefits under the BLBA.

### **PARTIES**

3.     Plaintiff, Arch Coal, is the parent corporation of wholly owned subsidiaries engaged in the mining and sale of coal and related activities at several locations throughout the United States.  Arch Coal is incorporated and organized under the laws of the State of Delaware, and has its principal place of business in St. Louis, Missouri.

4. Defendant, Thomas Perez, is the Secretary of Labor, United States Department of Labor, the principal official responsible for the administration and enforcement of the Black Lung Benefits Act and is directly and indirectly responsible for the illegal agency action complained of in this lawsuit.

5. Defendant, United States Department of Labor, is the agency of the United States principally responsible for the administration of the Black Lung Benefits Act and is directly responsible for the illegal agency actions complained of in this lawsuit.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1331.

7. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1).

## HISTORICAL BACKGROUND:
## THE BLBA

8. The BLBA was enacted on December 30, 1969, as a federal workers' compensation program to provide benefits to coal miners and their families on account of total disability or death due to coal workers' pneumoconiosis, also known as black lung disease.

9. In 1974, Congress directed the United States Department of Labor ("DOL" or "the Department of Labor") to administer the federal black lung program.

10. When Congress transferred the program to DOL for administration, Congress also transferred responsibility for the payment of benefits from United States general revenues to responsible coal mine operators and their insurers, for claims filed on or after July 1, 1973. 30 U.S.C. § 932(b).

11.    The BLBA states that "each operator … shall secure the payment of benefits for which he is liable under section 932 of this title by (1) qualifying as a self-insurer in accordance with regulations prescribed by the Secretary, or (2) insuring and keeping insured the payment of such benefits with any stock company or mutual company or association, or with any other person or fund, including any State fund, while such company, association, person or fund is authorized under the law of any State to insure workmen's compensation."  A self-insurance program approved by the Department of Labor is secured either by posting a surety bond in an amount prescribed by the Department of Labor or depositing cash or negotiable securities in an amount set by the Department or by creating a self-insurance trust.  20 C.F.R. §§ 726.104-107; Black Lung Benefits Revenue Act of 1977, Pub. L. No. 95-227, 92 Stat. 11 (1978).

12.    If a mine operator fails to purchase or provide for adequate insurance coverage under the Act, such operator, and if it is a corporation, its president, secretary and treasurer, may be liable for fines and penalties that are applicable in the case of non-compliance with the statutory insurance requirements and, in addition, may be personally liable for benefits awarded to miners and their families.  The liability of the enumerated officers to beneficiaries is mandatory under the BLBA in the absence of payment by the mine operator.  30 U.S.C. § 933(d).

13.    If a surety bond required by DOL does not suffice to pay any benefits ultimately awarded in a case, benefits are paid by a Black Lung Disability Trust Fund ("BLDTF").  26 U.S.C. § 9501(d)(1)(A).  The BLDTF is financed by a manufacturer's excise tax on coal.  26 U.S.C. §§ 4121, 9501.  If the tax revenues in a year are inadequate to cover BLDTF liability, cash advances covering the full amounts needed to pay benefit claims and expenses

are made by congressional appropriations from general revenues which are repayable in whole or in part with interest from coal tax revenues, if, in any year, tax revenues exceed the amounts needed to pay all benefits due and DOL's operating expenses for the Black Lung Program.

14.    Similarly, if no employer or carrier can be found liable for benefits owed to a beneficiary, the BLDTF pays any benefits that are due.  If a mine operator defaults on any payment of benefits, the amounts due also are paid by the BLDTF and may be recovered by the Secretary of Labor, with interest, in accordance with 30 U.S.C. § 934.

15.    In addition to these statutory requirements, the Secretary of Labor promulgated regulations implementing the insurance and self-insurance requirements of the BLBA and LHWCA.  Those regulations are set forth in 20 C.F.R. Part 726--Black Lung Benefits Requirements for Coal Mine Operator's Insurance.

16.    DOL's regulations provide that if the BLDTF pays benefits to a claimant on behalf of an operator or employer which is or was required to pay or secure the payment of those benefits, the operator shall be liable for the repayment of those amounts.  20 C.F.R. § 725.603(a).  If an operator refuses to pay the amount due to the United States after a demand for that amount, a lien shall arise on all property or rights to property, real or personal, belonging to the operator.  *Id.*, § 725.603(b).

17.    In the case of a bankruptcy or insolvency, the lien imposed "shall be treated in the same manner as a lien for taxes due and owing to the United States for purposes of the Bankruptcy Act or section 2466 of the Revised Statutes (31 U.S.C. § 191)."  *Id.*, § 725.603(c)(2).

18.    DOL's regulations further provide that "no suspension, termination or other failure to pay benefits awarded to a claimant is permitted."  20 C.F.R.

§ 725.605(a).  If a default is found after investigation, notice and hearing, a Department of Labor's district director or administrative law judge is authorized to issue a supplementary order declaring the amount in default on which judgment may be entered in the judicial district in which the operator has its principal place of business or maintains an office or in the judicial district in which the injury occurred.  20 C.F.R. § 725.605(b).

19.    DOL's regulations permit the Director to also require an operator or employer to secure the payment of all benefits ultimately payable on the claim, either in the form of a surety bond, a deposit of cash or negotiable securities or any other form acceptable to the Director.  20 C.F.R. § 725.606(a).  DOL's regulations implement the statutory requirement that if an operator or employer fails to discharge its insurance obligations, the corporation, the president, secretary, and treasurer shall be jointly and severally liable for any penalty or fines.  20 C.F.R. § 725.620(b).

20.    In cases in which judgment cannot be satisfied because the employer is insolvent, DOL's regulations provide that the district director shall make payment from the BLDTF.  20 C.F.R. § 725.605(c).

## Securing an Approved Self-Insurance Arrangement

21.    A mine operator that is otherwise qualified to self-insure its obligations under the BLBA has the choice of guaranteeing the payment of benefits by (1) posting negotiable securities in an amount set by the Secretary of Labor, (2) purchasing a surety bond reflecting a penal sum set by the Secretary, or (3) establishing a qualified tax exempt black lung benefit trust in accordance with 26 U.S.C. § 501(c)(21), that is funded in an amount set by the Secretary.

22.     An approved self-insured employer is permitted to pay benefits to eligible beneficiaries out of working capital, cash flow, or reserves set aside for this purpose.  Future benefits are guaranteed not only by the surety bonds, securities or trusts in place but by the economic strength of the employer as well.  Self-insurance is typically a less expensive way to secure benefits than a commercial insurance policy, where the premiums charged include a service fee, agent commissions, and the carriers' profit margin.

23.     The Department of Labor's black lung self-insurance program regulations require the re-authorization of a mine operator's self-insurance on a regular basis as prior self-insurance programs become outdated or inadequate.  The amount fixed by the Department of Labor to secure the self-insurance arrangement is established to fully cover the past, present and future liabilities of the employer in the event of a bankruptcy or other default.

Arch Coal and the Magnum Coal Company Transaction

24.     Arch Mineral Corporation ("Arch Mineral") began operating in 1969, as a partnership between Ashland Oil, Inc. (now Ashland Inc.), Hunt Petroleum Corporation, and Hunt Industries, Inc. (the "Hunt companies").

25.     Effective September 28, 1976, the Department of Labor approved Arch Mineral as a self-insurer under the BLBA.  Over the next two decades, DOL periodically renewed Arch Mineral's self-insurance authorization.  At times, it required Arch Mineral to execute a surety bond guaranteed by both Ashland Oil, Inc. and the two Hunt companies.  At other times, it informed Arch Mineral that it would forego the requested guarantees.  The amount of security DOL required also varied over this period, from $500,000 to $10,000,000.

26.     In July 1997, Arch Coal was formed through a merger of Ashland Coal, Inc., a wholly owned subsidiary of Ashland Oil, and Arch Mineral.

27.     In June 1998, Arch Coal expanded into the western United States with the acquisition of the coal assets of Atlantic Richfield, including the Black Thunder and Coal Creek mines (owned by Arch Coal's subsidiary, Thunder Basin Coal Company, L.L.C.) in the Powder River Basin of Wyoming; the West Elk longwall mine in Colorado; and a 65% interest in Canyon Fuel Company, which operated three longwall mines in Utah.  Arch Coal acquired the remaining 35% interest in Canyon Fuel Company in July 2004.

28.     Following these acquisitions, Arch Coal requested that the acquired companies be included in its self-insurance authorization under the BLBA.  On October 28, 1998, DOL authorized Arch Coal to self-insure its black lung benefits liability, including the liability of the subsidiaries acquired by Arch Coal, as well as the liabilities of Ashland Coal, Inc. and those of its subsidiaries that, prior to the acquisition, had purchased insurance commercially.  DOL stated that the surety bond provided by Arch Coal replaced the insurance policies.  It approved the self-insurance arrangement retroactive to October 1, 1977, the effective date of Arch Coal's self-insurance authorization.

29.     On December 31, 2005, Arch Coal sold 100% of the stock of its wholly owned subsidiaries, Hobet Mining, Inc. ("Hobet"), Apogee Coal Company ("Apogee") and Catenary Coal Company ("Catenary') to Magnum Coal Company "("Magnum") for $15 million and Magnum's assumption of certain liabilities, including its liabilities under the BLBA.  As of the closing of that transaction, Hobet and Apogee had an aggregate cash balance of $4,576,000 to provide benefits to "Benefits Covered Employees" (defined as any former employee of Arch of Kentucky, Arch of Alabama, Sharples Coal

Company, Zapata Coal Company, Arch of Illinois, Arch on the Green, Old Hickory Coal Company or Dal-Tex Coal Company)[1] under the Black Lung Benefits Reform Act of 1977, as amended in 1981.

30.     The parties further agreed that after the closing, Magnum would take over all of the liabilities of Apogee, Catenary and Hobet under the BLBA and Arch Coal was free and clear of those liabilities in transactions known to the Defendants and presumably approved by them.  In this way, Arch reduced its legacy liabilities, including liabilities associated with its federal black lung obligations under the BLBA, ensuring that all past, present and future BLBA claims were fully funded.

Patriot's Acquisition of Magnum

31.     Patriot was created on October 31, 2007, as a spin-off from Peabody Energy Corporation ("Peabody Energy").  Patriot then became a separate public company listed on the New York Stock Exchange.

32.     On April 2, 2008, Patriot entered into an Agreement and Plan of Merger with ArcLight Energy Partners Fund I, L.P., and ArcLight Energy Partners Fund II, L.P. ("ArcLight"), the owners of Magnum, in which Patriot created a wholly owned subsidiary, Colt Merger Corporation, to merge with and into Magnum.  When the merger became effective on July 23, 2008, Magnum continued as the surviving company and a wholly owned subsidiary of Patriot.

33.     Patriot maintained workers' compensation insurance for claims by Patriot retirees and current and former employees arising out of their

---

[1]     On January 1, 1993, Arch of Alabama, Arch of Kentucky, Arch of West Virginia and Arch on the Green merged into Arch of Illinois, Inc., which then changed its name to Apogee Coal Company.

employment with Patriot in the states where it did business, including occupational pneumoconiosis claims under applicable state law.  State authorities in Kentucky, West Virginia, Ohio, and Missouri required Patriot to post $109,863,188 in letters of credit to secure the payment of their workers' compensation program obligations.

34.    In addition, the Department of Labor authorized Patriot to self-insure its obligations under the BLBA (some of Patriot's older liabilities were covered by commercial insurance policies).  The Department of Labor required Patriot to post or deposit substantial cash assets in an amount deemed fully adequate by the Department of Labor to secure all of those obligations.

35.    On information and belief, the security approved by the Department of Labor covered all of Patriot's BLBA liability, past, present and future, including the liabilities of Magnum and its predecessor companies.

36.    On July 9, 2012, Patriot, and substantially all of its wholly-owned subsidiaries (including Magnum) filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the U.S. Code in the Bankruptcy Court for the Southern District of New York.  The Bankruptcy Court confirmed the Joint Plan of Reorganization of Patriot Coal Corporation and its subsidiaries on December 17, 2013, effective December 18, 2013.  When Patriot emerged from bankruptcy on that date, it was a privately-owned company.

37.    On May 12, 2015, Patriot and its wholly owned subsidiaries (including Magnum) again filed voluntary petitions for restructuring under Chapter 11.  This time, Patriot sold most of its operating assets to Blackhawk Mining, LLC and to an affiliate of the Virginia Conservation Legacy Fund, Inc. ("VCLF").

38.    In approving the joint plan of reorganization, the Bankruptcy Court ordered that "neither Blackhawk, the Combined Company, nor any of their

affiliates shall assume or be obligated to pay, perform, or otherwise discharge any … liability or benefit obligations related to black lung claims and benefits under the Black Lung Benefits Act of 1972, 30 U.S.C. §§ 901 *et seq.*, the Federal Mine Safety and Health Act of 1977, 30 U.S.C. §§ 801 *et seq.*, the Black Lung Benefits Reform Act of 1977, Pub. L. No. 95-239, 92 Stat. 95 (1978), the Black Lung Benefits Amendments of 1981, Pub. L. No. 97-119, Title 11, 95 Stat. 1643, (1981), in each case, as amended, if applicable, and occupational pneumoconiosis, silicosis, or other lung disease disabilities and benefits arising under federal or state law[.]"  Findings of Fact, Conclusions of Law, and Order (I) Confirming the Debtors' Fourth Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code and (II) Approving the Fourth Amended Disclosure Statement at 40-41, ¶ 118(c)**,** *In Re Patriot Coal Corp.*, Case No. 15-32450 (KLP) (E.D. Va. Oct. 9, 2015).

39.     In addition, the Bankruptcy Court ordered that:

> Neither Blackhawk, the Combined Company, nor any of their Affiliates shall be deemed, as a result of any action taken in connection with the Blackhawk Transaction Documents, the consummation of the Blackhawk Transaction and any other transaction contemplated by the Blackhawk Transaction Documents, or the transfer or operation of the Blackhawk Purchased Assets (a) to be a legal successor, or otherwise be deemed a successor to all or any of the Debtors; (b) to have, de facto or otherwise, merged with or into all or any of the Debtors; (c) to be an alter ego or a continuation of all or any of the Debtors; or (d) to have any responsibility for any obligations of all or any of the Debtors based on any theory of successor or similar theories of liability, including, without limitation, pursuant to the Black Lung Act, the Coal Act, or the UMWA 1974 Pension Plan.

*Id.* at ¶ 119.

40.    The Bankruptcy Court similarly ordered that VCLF has no responsibility for any liability or obligation of Patriot or "any other person relating to or arising out of the operations of or assets of the Debtors [Patriot] on or prior to the Effective Date" and "is not, and shall not be, a successor to the Debtors by reason of any theory of law or equity; and … shall not have any successor or transferee liability of any kind or character[.]"  Id. at 44-45, ¶ 124.

41.    Patriot's Plan of Reorganization became effective on October 26, 2015.  Patriot therefore informed the Department of Labor that it would no longer administer, defend or pay claims after October 31, 2015.

42.    The Plan of Reorganization did not acknowledge any extraneous liability for any category of Patriot's BLBA claims and the Department of Labor did not inform the Bankruptcy Court of any extraneous or alternative coverage for Patriot's BLBA liability.  On information and belief, all such liabilities were extinguished by the Bankruptcy Court's Order.

<u>The Department of Labor's Response to Patriot's Bankruptcy</u>

43.    On November 12, 2015, the Department of Labor issued a bulletin (BLBA Bulletin No. 16-01) applicable to "appropriate DCMWC Personnel" relating to Patriot's bankruptcy.  This bulletin was not issued for notice and comment in accordance with 5 U.S.C. § 553(b), and constitutes final agency action.

44.    The bulletin addresses three types of claims involving Patriot:  (a) approved or accepted claims; (b) pending claims; and (c) newly filed claims.

45.    The bulletin directs Department of Labor claims examiners to place claims that have been approved or accepted into the BLDTF for payment of monthly and medical benefits.

46.    For claims that are pending before the Department's Office of Administrative Law Judges, the bulletin requires review by the Regional Solicitor, working with the Claims Support Section to determine whether cases should be remanded to the district director for payment by the BLDTF or defended in litigation.

47.    For claims filed after the issuance of the bulletin or before a notice of a claim has been issued to a potential responsible operator, the bulletin directs DOL's staff to review the claim and determine (a) whether commercial coverage exists for the Patriot subsidiary involved in the claim and if so, to notify the insurance carrier; (b) whether the claim is covered under Peabody Energy's self-insurance or a Peabody Energy commercial insurance policy and, if so, to either notify Peabody Energy's third-party administrator or the insurance carrier, as appropriate; or (c) whether the claim is covered by Arch Coal's self-insurance (provided the last coal mine employment took place before January 1, 2006), or an Arch Coal commercial insurance policy and if so, to notify Arch Coal's third-party administrator or the insurance carrier, as appropriate.  DOL identified three Patriot subsidiaries that were under Arch Coal's self-insurance authority or were covered at some point in time, by a commercial insurance policy—Apogee, Catenary, and Hobet.

48.    DOL bulletins are binding on the district director.

49.    Under DOL's regulations, once the district director has identified a responsible operator and the case has proceeded to the Office of Administrative Law Judges, an ALJ has no choice but to follow the designation of the responsible operator made by the district director.  *See* 20 C.F.R. § 725.465(d) ("No claim shall be dismissed in a case with respect to which payments prior to final adjudication have been made to the claimant in accordance with § 725.522 [by the BLDTF], except upon the motion or written

agreement of the Director.").  Under DOL's regulation, the Director's consent is thus required in order to dismiss a responsible operator designated by the district director.  20 C.F.R. § 725.465(b) ("The administrative law judge shall not dismiss the operator designated as the responsible operator by the district director, except upon the motion or written agreement of the Director.").

50.    The Department of Labor's response to Patriot's bankruptcy reflects a departure from DOL's practice with respect to other bankruptcy proceedings and a departure from its own regulations.  *See e.g.*, BLBA Bulletin No. 12-07 (advising that the BLDTF was required to be responsible for any claim in which the self-insured operator did not possess sufficient assets to secure the payment of benefits); BLBA Bulletin No. 14-02 (issued April 29, 2014) (advising that once a surety's bond had been surrendered, the BLDTF would be responsible for the payment of benefits).

51.    The Department of Labor has not previously sought to assign liability to former stockholders or owners of assets later acquired by the insolvent operator.

52.    The Department of Labor's regulations do not authorize the imposition of liability on prior stockholders or owners.   More than fifteen years ago, DOL promulgated criteria for determining a responsible operator. 20 C.F.R. §§ 725.494, 725.495.  Under section 725.494, the responsible operator is the operator that most recently employed the miner for at least one year.  If that operator is not capable of assuming its liability for the payment of continuing benefits, the responsible operator is the company that next most recently employed the miner.  20 C.F.R. § 725.494(a), (c), (e); 20 C.F.R. § 725.495(a)(3).

53.    The Department of Labor amended its prior regulations in at least one respect relevant here.  Section 725.495(a)(4) states:

> If the miner's most recent employment by an operator ended while the operator was authorized to self-insure its liability under part 726 of this title, and that operator no longer possesses sufficient assets to secure the payment of benefits, the provisions of paragraph (a)(3) shall be inapplicable with respect to any operator that employed the miner only before he was employed by such self-insured operator.   If no operator that employed the miner after his employment with the self-insured operator meets the conditions of § 725.494, the claim of the miner or his survivor shall be the responsibility of the Black Lung Disability Trust Fund.

54.     The Department of Labor explained the rationale behind this change when it promulgated it in 2000.  The preamble to the regulations states that with respect to section 725.495:

> That regulation now provides that if the miner's most recent employer was a self-insured operator which no longer possesses sufficient assets to secure the payment of benefits when the miner files his claim, the Department will not name a previous employer as responsible operator. Rather, the claim will be the responsibility of the Black Lung Disability Trust Fund. The Department has made this change in response to a comment that stated that it is unfair to name a prior employer as liable for a claim when the financial inability of the later employer to pay the claim is the fault of the Department.  Because the Department has the authority to accept or reject applications for self-insurance and to set minimum standards for qualifying as a self -insurer, the Department agrees with the commenter. Thus, to the extent the security deposited by a self-insured coal mine operator pursuant to § 726.104 proves insufficient to pay individual claims, liability will not be placed on previous employers, but rather on the Trust Fund.

65 Fed. Reg. 79920, 79924 (Dec. 20, 2000).

55.     The Secretary reiterated this explanation later in the preamble, stating:

> By contrast, the Department does have the authority to accept or reject applications for self-insurance and to set the minimum standards applicable for qualifying as a self-insurer. 30 U.S.C. 933(a)(1). To the extent that the security deposited by a self-insured coal mine operator pursuant to § 726.104 proves insufficient to pay individual claims, the Department agrees that the liability for those claims should not be placed on operators that previously employed the miner. Rather, in establishing the amount of security required, the Department voluntarily accepts the risk that self-insured operators will not have deposited sufficient security to pay claims if they are liquidated or become bankrupt.

65 Fed. Reg. 80008.

## DOL's Implementation of BLBA Bulletin No. 16-01

56.     Following the issuance of BLBA Bulletin No. 16-01, the Department of Labor's district directors began notifying Arch Coal of its potential liability for claims that were included in Patriot's self-insurance authorization.

57.     DOL has notified Arch Coal of at least seventy such claims. In some cases, DOL notified Patriot first and then started over by notifying Arch Coal after the Patriot bankruptcy closed.

58.     The Department of Labor's regulations impose time deadlines for the parties to a claim to both object to a company's designation as a potential responsible party and to prosecute or defend a claim on the merits. *See, e.g.*, 20 C.F.R. § 725.408, 725.410, 725.412.

59.     Arch Coal therefore has no choice but to hire counsel and defend these claims. On information and belief, the average cost to defend a claim is $10,000.

# COUNT I
## VIOLATIONS OF THE APA'S RULEMAKING PROCEDURES
### 5 U.S.C. § 553(b)

60.    Plaintiff incorporates by reference Paragraphs 1-58 of the Complaint as though fully set forth herein.

61.    The Department of Labor's BLBA Bulletin No. 16-01 effectively amends the Department of Labor's regulations at 20 C.F.R. §§ 725.490, 725.492; 725.493; 725.494; 725.495; 726.105; 726,109, 726.110; 726.114 to impose a regime of joint and several liability on mine owners and establish new grounds for liability of corporate predecessors not described or contemplated by the Department's existing liability regulations.

62.    The Department of Labor's BLBA Bulletin No. 16-01 contravenes 20 C.F.R. § 725.495(a)(3), (4) and the Department's self-insurance regulations by excusing an approved self-insurance program from liability assigned to it by the Department of Labor in accordance with 20 C.F.R. Part 726, Subpart B; 20 C.F.R. §§ 726.104; 726.105-115.  It instead imposes such liability on owners and stockholders that transferred all such liability to successor corporations which, in turn, fully secured those liabilities as ordered by the Department of Labor. The sellers were fully and legally absolved of any such liability and could not have anticipated that the Department of Labor would seek to re-impose it without prior notice of such obligation or an opportunity to secure any kind of insurance for that liability.

63.    BLBA Bulletin No. 16-01 contravenes 20 C.F.R. § 725.495(a)(3), (4) which requires the assignment of claims subject to an approved self-insurance program "where the program no longer possesses sufficient assets to secure the payment of benefits . . . . [to] the Black Lung Disability Trust

Fund," as well as DOL's explanation of its regulation in 65 Fed. Reg. 799924, 80008.

64.    Arch Coal has been identified as the responsible party in at least seventy claims based on the Department of Labor's reliance on BLBA Bulletin No. 16-01 and in derogation of existing regulations and their interpretation by the Department of Labor reflected by past practices.  The regulations that were published and as previously administered by the Department of Labor are significantly amended by the bulletin.  The Department of Labor had not previously attempted to upset the contractual obligations between a buyer and seller in its search for a responsible party.  The Department of Labor's regulations contain no provisions allowing it.

65.    Liability for Hobet, Apogee and Catenary was no longer included within the coverage approved by the Department of Labor for Arch Coal's applicable self-insurance authorizations after the sale of those entities to Magnum.

66.    The cost of DOL's new rule to Arch Coal will exceed $10 million.

67.    The Department of Labor has not published any of the regulatory changes described in this Count I in the Federal Register for notice, comment or public participation, as is required by the APA, 5 U.S.C. §553(b), and the Black Lung Benefits Act, 30 U.S.C. § 936(a) (requiring the application of the APA's rulemaking requirements to all regulations and amended regulations applicable under the BLBA).

68.    Arch Coal has suffered, and will continue to suffer, substantial adverse effects from the Department of Labor's illegal revision of its rules, including the necessity of bearing the cost of defense in at least seventy claims, the need to book and secure the substantial liabilities involved, none of which

are considered or covered under existing self-insurance programs approved by the Department of Labor.

69.     There is no adequate remedy at law for the deprivations described in this Count.  The Department of Labor's imposition of liability on Arch Coal for Patriot claims is not redressable in the claims process and the damage to Arch Coal cannot be remedied in the litigation of individual black lung claims.

70.     The implementation of the Department's BLBA Bulletin No. 16-01 is final agency action and is being enforced as such.

71.     Arch Coal has relied upon the Department of Labor's practices and procedures for the identification of a responsible party.  Such practices have not included joint and several liability for prior owners or attempts to disrupt closed contracts for the purchase and sale of mining properties.  The Department of Labor's action is neither authorized by statute nor consistent with general principles of corporate law.  Arch Coal's black lung self-insurance programs, actuarial assumptions and reserving practices, did not and were not required to include BLBA claims allocated to Magnum or Patriot.

72.     For these reasons, Arch Coal seeks a declaration that the Department of Labor's practices as described herein are illegal and violate the mandatory requirements of the APA.  Arch Coal further seeks a permanent injunction prohibiting the Department of Labor and Secretary of Labor from continuing these practices and imposing on Arch Coal, Patriot's liability for the black lung claims described herein.

## COUNT II
## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT –
## RETROACTIVE RULEMAKING

73.     Plaintiff incorporates by reference Paragraphs 1-71 of this Complaint as though fully set forth herein.

74.     BLBA Bulletin No. 16-01 retroactively imposes new liability on long closed transactions and retroactively alters the terms of the applicable self-insurance regulations that do not contemplate retroactive liability.  The bulletin reaches far back into the past to impose new burdens on transactions entered into under regulations in effect at that time.

75.     The Department of Labor has no authority to regulate retroactively or to write rules that upset the reasonable expectations and arrangements made in response to the rules in effect at the relevant time.

76.     Retroactive rules are prohibited in the absence of express statutory authorization to change the regulatory treatment of past and current transactions.  No applicable law provides such authorizations.

77.     As a result of the Department of Labor's retroactive rulemaking in Bulletin No. 16-01 as described herein, Arch Coal has suffered, and will continue to suffer, significant and irreparable injury as described in Count I herein.

78.     The Department of Labor's retroactive rulemaking is final agency action and there is no other adequate remedy at law that will provide full relief to Arch Coal.

79.     In this Count II, Plaintiff, Arch Coal, seeks a declaration that the Department of Labor's retroactive rulemaking is unauthorized and without legal authority, and further requests that this Court permanently enjoin the Department of Labor and Secretary of Labor from enforcing its retroactive

rules purporting to re-open and change the rules applicable to long closed transactions.

## COUNT III
## VIOLATION OF BLBA
## 30 U.S.C. § 932(i)

80.    Plaintiff incorporates by reference Paragraphs 1-78 of this Complaint as though fully set forth herein.

81.    Section 422(i)(1), (3) of the BLBA, 30 U.S.C. § 932(i)(1), (3) establishes criteria for determining the liability of successors in interest where ownership of a coal mine is passed on to a successor owner.

82.    Section 422(i)(2) preserves contingent liability of a "prior operator," and has been interpreted by the Department of Labor to refer to a different company not in this chain of succession referred to in 30 U.S.C. § 932(i)(1), (3).

83.    The Department of Labor's imposition of liability on an original or intermediate owner of the same mine is not supported by the plain language of the BLBA.  A prior owner that was no more than a pass-through owner that legally has transferred all BLBA liabilities could not obtain and would not have insurance or self-insurance for any such liability.

84.    The Department of Labor's new interpretation of this section is arbitrary, capricious, an abuse of discretion, and not in accordance with law, and is thus invalid.

85.    There is no other adequate remedy at law for redress of the Department of Labor's erroneous interpretation of 30 U.S.C. § 932(i).

86.    Wherefore, the Court should declare that the Department of Labor's and the Secretary of Labor's application of 30 U.S.C. § 932(i) is contrary to law and it should be enjoined.

## COUNT IV
## VIOLATION OF DUTY TO APPLY PATRIOT'S SELF-INSURANCE ASSETS

87.     Plaintiff incorporates by reference Paragraphs 1-85 of this Complaint as though fully set forth herein.

88.     Patriot was approved by the Department of Labor as a self-insurer. All claims by employees of Magnum and all claims filed by employees of prior Arch Coal entities that were sold to Magnum are fully included in Patriot's self-insurance authorization.

89.     Every claim addressed in this litigation became a liability of Patriot's self-insurance program.

90.     Patriot qualified as a self-insurer for all past, present and future claims, arising out of employment with Magnum or the prior Arch Coal entities that were sold to Magnum.  *See* 20 C.F.R. § 726.105.

91.     Patriot posted security in an amount deemed sufficient by the Department of Labor to cover all liabilities for such claims.  The self-insurance agreement did not exclude any liability for any such claim or preserve any liability on the part of Arch Coal.  Any liability Arch Coal may have had in the past was fully extinguished by the Patriot self-insurance agreement and predecessor agreements.

92.     The Department of Labor's regulations and practices require the Black Lung Disability Trust Fund to recover self-insurance assets of an insolvent mining company like Patriot and to pay black lung claims out of the assets received or recoverable from the approved self-insurance reserves or surety bond.

93.     The Department of Labor has made no accounting of the assets of Patriot's self-insurance reserves, nor has the Department of Labor made any effort to apply those assets to claims now being asserted by the Department of Labor

against Arch Coal.  Further, on information and belief, it appears that the Department or Labor has been holding claims back from standard processing procedures in an effort to increase the number of claims asserted against Arch Coal and decrease liability that must be covered under Patriot's self-insurance program.

94.     The Department of Labor's failure to follow its regulations by imposing liability for all claims based upon employment with Magnum or the Arch Coal entities has caused harm to Arch Coal and is continuing to do so.

95.     The Department of Labor's violation of its regulations, departure from ordinary practices, and breach of its agreements constitute final agency action for which there is no other adequate remedy at law.

96.     Arch Coal seeks a declaration that the Department of Labor's imposition of new and unanticipated liabilities on Arch Coal is arbitrary, capricious, an abuse of discretion and not in accordance with law.

**97.**     Arch Coal further seeks a permanent injunction barring the Department of Labor and Secretary of Labor from the practices complained of here.

## RELIEF REQUESTED

Wherefore, Arch Coal demands judgment, declaratory relief and a permanent injunction against the United States Department of Labor and Secretary of Labor on all counts and for interest, costs, expenses and attorneys' fees as are

available under applicable law, and such other relief as the Court may deem necessary and proper.

Respectfully submitted,
s/ Mark E. Solomons
Mark E. Solomons
GREENBERG TRAURIG, LLP
2101 L Street, N.W. Suite 1000
Washington, D.C.  20037
D.C. Bar No. 344440
(202) 533-2361
solomonsm@gtlaw.com

s/ Laura Metcoff Klaus
Laura Metcoff Klaus
GREENBERG TRAURIG, LLP
2101 L Street, N.W.
Suite 1000
Washington, D.C.  20037
D.C. Bar No. 294272
(202) 533-2362
klausl@gtlaw.com

Counsel for Plaintiff

Dated: April 8, 2016