**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ARCH COAL, INC.,

                 Plaintiff,

     v.

THOMAS PEREZ, SECRETARY, LABOR
and UNITED STATES DEPARTMENT OF
LABOR,

                 Defendants.

Civil Docket No. 1:16-CV-00669-JDB

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................3

    I.      STATUTORY AND REGULATORY BACKGROUND ...........................................3

    II.     FACTUAL BACKGROUND ....................................................................................6

ARGUMENT ..........................................................................................................................8

    I.      EXCLUSIVE JURISDICTION OVER QUESTIONS "IN RESPECT
           OF A CLAIM" LIES IN THE FEDERAL COURTS OF APPEALS ...........................8

          A.     It Is Fairly Discernable From the Statutory Scheme That Congress
                 Intended to Make the Black Lung Benefits Act's Remedial Scheme
                 Excusive ......................................................................................................9

          B.     Plaintiff's Claims Are "of the Type" Congress Intended to Channel
                 to the Administrative Scheme and, Ultimately, a Court of Appeals ...............14

               1.     The BLBA Claims Process Allows for Meaningful
                      Judicial Review of Arch's Claims .......................................................15

               2.     Arch's Claims Cannot Possibly Be Described as
                      "Wholly Collateral" to the BLBA's Review Scheme .........................17

                3.     Arch's Fundamental Claim That It Is Not Liable For
                      Certain Claims Is Well Within the Agency's Expertise .....................20

          C.     The D.C. Circuit's Decision in *National Mining Association* Does
                 Not Compel a Contrary Result..................................................................23

    II.     PLAINTIFF HAS FAILED TO STATE A CLAIM BECAUSE THE
           AGENCY ACTION IT CHALLENGES IS NOT FINAL ...........................................25

          A.     Plaintiff Does Not Challenge "Final Agency Action for Which
                 There Is No Other Adequate Remedy," as Required by the APA .................25

          B.     For the Same Reasons the Bulletin Is Not Final Agency Action,
                 Plaintiff's Claims Are Unripe for Review .....................................................30

CONCLUSION.......................................................................................................................32

## TABLE OF AUTHORITIES

**CASES**                                                              **PAGE(S)**

*Aluminum Co. of Am. v. United States,*
    790 F.2d 938 (D.C. Cir. 1986) ......................................................... 29

*Am. Petroleum Inst. v. EPA,*
    683 F.3d 382 (D.C. Cir. 2012) ......................................................... 32

*Am. Rd. & Transp. Builders Ass'n v. EPA,*
    865 F. Supp. 2d 72 (D.D.C. 2012) ................................................... 25

*Ark. Coals, Inc. v. Lawson,*
    739 F.3d 309 (6th Cir. 2014) ...................................................... 5, 21

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................... 6

*BethEnergy Mines, Inc. v. Dir., OWCP,*
    32 F.3d 843 (3d Cir. 1994) ....................................................... 11, 18

*Beverly Health & Rehab. Servs., Inc. v. Feinstein,*
    103 F.3d 151 (D.C. Cir. 1996) ......................................................... 29

*\*Bombardier, Inc. v. U.S. Dep't of Labor,*
    145 F. Supp. 3d 21 (D.D.C. 2015) ............................................. passim

*Borg-Warner Protective Servs. Corp. v. EEOC,*
    245 F.3d 831 (D.C. Cir. 2001) ......................................................... 29

*Carozza v. U.S. Steel Corp.,*
    727 F.2d 74 (3d Cir. 1984) .............................................................. 25

*Cohen v. United States,*
    650 F.3d 717 (D.C. Cir. 2011) ......................................................... 32

*\*Comp. Dep't of Dist. Five, United Mine Workers of Am. v. Marshall,*
    667 F.2d 336 (3d Cir. 1981) ...................................................... passim

*Czaplicki v. Vessel "Ss Hoegh Silvercloud",*
    223 F.2d 189 (2d Cir. 1955) .............................................................. 9

*Dir., OWCP v. Newport News Shipbuilding & Dry Dock Co.,*
    514 U.S. 122 (1995) ....................................................................... 13

*DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.,*
   76 F.3d 1212 (D.C. Cir. 1996) .......................................................... 29

*Elgin v. Dep't of Treasury,*
   132 S. Ct. 2126 (2012) ...................................................................*passim*

*Dresser v. Meba Med. & Benefits Plan,*
   628 F.3d 705 (5th Cir. 2010) ........................................................... 26

*Equitable Equip. Co. v. Dir., OWCP,*
   191 F.3d 630 (5th Cir. 1999) ........................................................... 18

*FTC v. Standard Oil Co. of Cal.,*
   449 U.S. 232 (1980) ............................................................... 3, 27, 28

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
   561 U.S. 477 (2010) ...................................................................... 8, 16

*Garcia v. Vilsack,*
   563 F.3d 519 (D.C. Cir. 2009) ......................................................... 25

*Gibas v. Saginaw Mining Co.,*
   748 F.2d 1112 (6th Cir. 1984) ......................................................... 25

*Haines v. Fed. Motor Carrier Safety Admin.,*
   814 F.3d 417 (6th Cir. 2016) ........................................................... 26

*Hall v. Sebelius,*
   689 F. Supp. 2d 10 (D.D.C. 2009) .................................................... 26

*Harris v. FAA,*
   353 F.3d 1006 (D.C. Cir. 2004) ....................................................... 31

*Hill v. Sec. & Exch. Comm'n.,*
   No. 15-12831, 2016 WL 3361478 (11th Cir. June 17, 2016) ................ 8

*Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.,*
   664 F.3d 940 (D.C. Cir. 2012) ..................................................... 29, 30

*In re Blue Diamond Coal Co.,*
   163 B.R. 798 (Bankr. E.D. Tenn. 1994) ............................................. 9

*Jarkesy v. SEC,*
   803 F.3d 9 (D.C. Cir. 2015) ...........................................................*passim*

iv

*Jicarilla Apache Nation v. U.S. Dep't of Interior,*
   648 F. Supp. 2d 140 (D.D.C. 2009) ...................................................................30

*Kalaris v. Donovan,*
   697 F.2d 376 (D.C. Cir. 1983) .........................................................................14

*Karst Envtl. Educ. & Prot., Inc. v. EPA,*
   475 F.3d 1291 (D.C. Cir. 2007) .......................................................................26

*Kentland Elkhorn Coal Corp. v. Hall,*
   287 F.3d 555 (6th Cir. 2002) ...........................................................................21

*Kreschollek v. S. Stevedoring Co.,*
   78 F.3d 868 (3d Cir. 1996) ...............................................................................12

*Lacomastic Corp. v. Parker,*
   54 F. Supp. 138 (D. Md. 1944) ...........................................................................9

*Louisville & Nashville R.R. Co. v. Donovan,*
   713 F.2d 1243 (6th Cir. 1983) .....................................................................8, 17

*Maxon Marine, Inc. v. Dir., OWCP,*
   39 F.3d 144 (7th Cir. 1994) ........................................................................12, 20

*McKart v. United States,*
   395 U.S. 185 (1969)...........................................................................................22

*McNary v. Haitian Refugee Center, Inc.,*
   498 U.S. 479 (1991)...........................................................................................16

*Nat'l Mining Ass'n v. Dep't of Labor,*
   292 F.3d 849 (D.C. Cir. 2002) .................................................................*passim*

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
   538 U.S. 803 (2003).....................................................................................31, 32

*Ohio Forestry Ass'n v. Sierra Club,*
   523 U.S. 726 (1998)...........................................................................................30

*P.T. Mine Servs., Inc. v. Dir., OWCP,*
   412 F. App'x 461 (3d Cir. 2011) .......................................................................21

*Peabody Coal Co. v. Dir., OWCP,*
   40 F.3d 906 (7th Cir. 1994) ..............................................................................18

*Peter Kiewit Sons' Co. v. U.S. Army Corps of Eng'rs,*
  714 F.2d 163 (D.C. Cir. 1983) ................................................................. 29

*Pub. Citizen v. Office of U.S. Trade Representatives,*
  970 F.2d 916 (D.C. Cir. 1992) ................................................................. 30

*Pyro Mining Co. v. Slaton,*
  879 F.2d 187 (6th Cir. 1989) ..................................................................... 5

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n,*
  324 F.3d 726 (D.C. Cir. 2003) ................................................................. 29

*Roberts v. Sea-Land Servs., Inc.,*
  132 S. Ct. 1350 (2012) ............................................................................ 11

*Sea B Mining Co. v. Dir., OWCP,*
  45 F.3d 851 (4th Cir. 1995) ...........................................................*passim*

*Temp. Emp't Servs. v. Trinity Marine Grp., Inc.,*
  261 F.3d 456 (5th Cir. 2001) ................................................................... 18

*Thompson v. Potashnick Constr. Co.,*
  812 F.2d 574 (9th Cir. 1987) ................................................................... 13

*\*Thunder Basin Coal Co. v. Reich,*
  510 U.S. 200 (1994) .......................................................................*passim*

*Va. Crews Coal Co. v. Dir., OWCP,*
  894 F.2d 403 (4th Cir. 1990) ................................................................... 21

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
  136 S. Ct. 1807 (2016) ...................................................................... 19, 26

*Van Allen v. U.S. Dep't of Veterans Affairs,*
  925 F. Supp. 2d 119 (D.D.C. 2013) ........................................................ 26

*Whitney Nat'l Bank in Jefferson Par. v. Bank of New Orleans & Trust Co.,*
  379 U.S. 411 (1965) ................................................................................. 12

*William Bros., Inc. v. Pate,*
  833 F.2d 261 (11th Cir. 1987) ................................................................. 21

*Youghiogheny & Ohio Coal Co. v. Vahalik,*
  970 F.2d 161 (6th Cir. 1992) ............................................................ 10, 18

## ADMINISTRATIVE DECISIONS

*Anna Victoria Ratliff (Widow of Kennard O. Ratliff), Claimant-Respondent,*
   BRB No. 11-0321 BLA, 2012 WL 423884 (Ben. Rev. Bd. Jan. 30, 2012)............................21

*Clarice Howard (Widow of James Howard), Claimant-Respondent,*
   BRB No. 11-0111 BLA, 2011 WL 5508677 (Ben. Rev. Bd. Oct. 24, 2011) ........................22

*Deborah Ramey (Widow of Billy J. Ramey), Claimant-Respondent,*
   BRB No. 13-0070 BLA, 2013 WL 6408504 (Ben. Rev. Bd. Nov. 25, 2013) ........................21

*Deloris J. Mullins (o/b/o & Widow of Turl Mullins), Claimant-Respondent,*
   BRB No. 14-0169 BLA, 2015 WL 1010102 (Ben. Rev. Bd. Feb. 26, 2015) ........................22

*Henry Lee Jude, Claimant-Respondent,*
   BRB No. 06-0659 BLA, 2007 WL 7629358 (Ben. Rev. Bd. May 23, 2007)........................22

*Irene Slone (Widow of Ezra D. Slone), Claimant-Respondent,*
   BRB No. 01-0202 BLA, 2001 WL 36392198 (Ben. Rev. Bd. Nov. 29, 2001) ......................21

*Ronald L. Lynch, Claimant-Petitioner,*
   BRB Nos. 10-0209, 10-0209, 2010 WL 8111398 (Ben. Rev. Bd. Dec. 8, 2010)..................22

*Tom Mix Pickett, Claimant-Respondent,*
   BRB No. 99-0202 BLA, 2000 WL 35927573 (Ben. Rev. Bd. June 30, 2000).......................21

*William Tomasek, Sr., Claimant,*
   BRB No. 13-0422 BLA, 2014 WL 3388566 (Ben. Rev. Bd. June 4, 2014)...........................21

## STATUTES & REGULATIONS

5 U.S.C. § 704...............................................................................................................3, 25
26 U.S.C. § 4121..................................................................................................................5
26 U.S.C. § 9501..................................................................................................................5
30 U.S.C. §§ 901–945..........................................................................................................1
30 U.S.C. § 932..............................................................................................................4, 11
30 U.S.C. § 933....................................................................................................................4
30 U.S.C. § 934..............................................................................................................5, 13
33 U.S.C. § 919...................................................................................................4, 5, 11, 18
33 U.S.C. § 921............................................................................................................*passim*
20 C.F.R. §§ 725.301-725.423.............................................................................................4
20 C.F.R. § 725.418.............................................................................................................5
20 C.F.R. § 725.419.............................................................................................................5
20 C.F.R. §§ 725.450-725.483...........................................................................................11
20 C.F.R. § 725.453...........................................................................................................11
20 C.F.R. § 725.455.....................................................................................................5, 11

20 C.F.R. § 725.456 .................................................................................................. 11
20 C.F.R. § 725.463 .................................................................................................. 11
20 C.F.R. § 725.481 .................................................................................................. 11
20 C.F.R. § 725.482 .................................................................................................. 12
20 C.F.R. § 725.494 .................................................................................................... 4
20 C.F.R. § 725.495 .................................................................................................... 4
20 C.F.R. § 725.502 ...................................................................................... 5, 15, 28
20 C.F.R. part 726 ...................................................................................................... 4
20 C.F.R. § 802.105 .................................................................................................. 12
20 C.F.R. § 802.301 .................................................................................................. 11
20 C.F.R. § 802.407 .................................................................................................... 5

## LEGISLATIVE MATERIALS

Rules Implementing the Federal Coal Mine Health & Safety Act of 1969,
    65 Fed. Reg. 79,920 (Dec. 20, 2000) ..................................................................... 15

## INTRODUCTION

Ignoring a clear command from Congress and contravening well-settled precedent of the Supreme Court and the D.C. Circuit, Plaintiff Arch Coal, Inc. ("Arch") seeks to circumvent a carefully calibrated administrative review scheme by filing this lawsuit for declaratory and injunctive relief apparently out of a concern that it might be liable for several dozen claims for benefits under the Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901–945 ("BLBA" or "the Act"). That, it cannot do. Binding decisions of the Supreme Court and D.C. Circuit dictate that where, as here, a comprehensive administrative regime channels grievances to the administrative process and, ultimately, to a federal court of appeals, district courts lack jurisdiction. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994); *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015).

Arch's lawsuit arises out of a document — BLBA Bulletin No. 16-01 (Nov. 12, 2015) ("the Bulletin") (attached hereto as Exhibit A) — issued by the Department of Labor ("DOL" or "Labor") Office of Workers' Compensation Programs to address issues created by the recent declaration of bankruptcy by Patriot Coal Corporation ("Patriot"). As relevant here, it instructs Office of Workers' Compensation Programs personnel how to handle a claim for black lung benefits when the claimant was last employed by one of three Arch subsidiaries that later became Patriot subsidiaries. After the Bulletin issued, Arch was allegedly notified that it was potentially liable for some seventy-odd claims in this category, but Arch believes that Patriot should have been named the entity potentially responsible for paying the claims in question.

*Thunder Basin* and its progeny require that Arch's Complaint be dismissed for lack of subject matter jurisdiction. These decisions bar district court review when it is "fairly discernable," *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2133 (2012), that Congress intended

1

claims "of the type" in question, *Jarkesy*, 803 F.3d at 15, to be decided within an administrative structure.  First, it is "fairly discernable" from the BLBA's "text, structure, and purpose," *Elgin*, 132 S. Ct. at 2133, that Congress intended for determinations as to who is to pay a claim for benefits to be made and reviewed administratively or on appeal to a court of appeals.  The BLBA's review scheme — prescribing an initial agency determination and permitting further review by an ALJ, the DOL's Benefits Review Board, and a federal court of appeals — is as comprehensive as those deemed exclusive in *Thunder Basin* and *Jarkesy*.  Further, the Act expressly allows for district court review in carefully defined circumstances, but *not* those presented by Arch's claim.  Congress's intent is further evinced by the fact that it consciously chose in 1972 to transfer jurisdiction over claims such as those here from the district courts to the courts of appeals, and later flatly *rejected* a proposal to expand district court jurisdiction.

Arch's claims are also plainly "of the type Congress intended to be reviewed within [the] statutory structure." *Jarkesy*, 803 F.3d at 15 (citation omitted).  The determination of who is responsible for paying BLBA benefits is classically the province of the administrative process. Congress designed a comprehensive scheme in which such determinations are to be made and, indeed, such questions are decided administratively *all the time*.  Moreover, each of the "general guideposts" helpful in determining whether the presumption in favor of agency review can be overcome, *id.*, suggests that it cannot: district court litigation is not necessary to guarantee Arch a chance at meaningful judicial review; Arch's claims are not wholly collateral to the statutory review scheme; and Arch's claims fit comfortably within the scope of the agency's expertise.  As a result, the Complaint must be dismissed for lack of subject matter jurisdiction.

Even if the Court disagrees as to its jurisdiction, additional threshold barriers bar the Court from reaching the merits and require dismissal for failure to state a claim.  Where not

otherwise provided for by statute, the APA permits judicial review of "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  Here, not only is the aforementioned scheme of administrative review, culminating in appeal to a federal appellate court, an adequate remedy, but the challenged Bulletin is not final.  To be final, agency action must mark the consummation of the decisionmaking process and it must alter rights or obligations — *i.e.*, trigger legal consequences.  The Supreme Court and the D.C. Circuit have consistently held that preliminary determinations of potential future legal liability, which prompt only additional agency review, are not final.  *See, e.g.*, *FTC v. Standard Oil Co. of Cal. ("Socal")*, 449 U.S. 232 (1980).  The Bulletin is just such a document.  That it might have the practical effect of forcing Arch to engage in the administrative process, and even to hire attorneys, does not render it sufficiently final to permit judicial review.  For these same reasons, Plaintiff's claims also fail as unripe.

For all of the foregoing reasons as well as those that follow, the Complaint should be dismissed with prejudice.[1]

## BACKGROUND

## I.    STATUTORY AND REGULATORY BACKGROUND

The Black Lungs Benefits Act "is a federally administered law providing benefits to coal miners who are totally disabled due to pneumoconiosis, also known as black lung disease, and to the surviving dependents of miners who died of the disease."  *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 854 (D.C. Cir. 2002) (per curiam).  "Black lung disease encompasses a cruel set of conditions that afflict a significant percentage of the nation's coal miners with 'severe, and frequently crippling, chronic respiratory impairment.'"  *Id.* (quoting *Usery v. Turner*

---

[1] Defendants herein present just threshold defenses and will be prepared to argue the merits of Plaintiff's claims should the Complaint survive this motion.

*Elkhorn Mining Co.*, 428 U.S. 1, 6 (1976)).  The Act provides that "coal mine operators are responsible for paying benefits to miners whose death or total disability due to black lung disease arose out of employment in the mines." *Id.* (citing 30 U.S.C. § 932).

The BLBA's claim process is derived from, and largely similar to, the claim process under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (the "Longshore Act").  *See, e.g.*, 30 U.S.C. § 932(a) (incorporating provisions of the Longshore Act into the BLBA).[2]  To seek benefits under the BLBA, a miner may "fil[e] a claim with the District Director in the Department of Labor's Office of Workers' Compensation Programs." *Id.*  The district director is responsible for the preliminary stage of the BLBA claims process, investigating the claim in order to determine the claimant's eligibility for benefits as well as which of his employers will be designated as being responsible for payment. *Id.* § 919(c); 20 C.F.R. §§ 725.301–725.423.

The operator responsible for paying a particular claim — the responsible operator — is the claimant's most recent employer that is capable of paying the claim[3] and for whom the claimant worked for at least a year.  *See* 20 C.F.R. §§ 725.494(c)(e), 725.495.  The claimant's work for that operator must have "caused, contributed to or aggravated the progression or advancement of a miner's loss of ability to perform his or her regular coal mine employment or comparable employment."  20 C.F.R. § 725.494(a).  Alternately, where no responsible operator can be identified, or where a responsible operator fails to pay benefits promptly, the congressionally established Black Lung Disability Trust Fund ("the Fund") — financed by

---

[2]  All provisions of the Longshore Act cited herein are incorporated into the BLBA.

[3]  In order to maximize the likelihood that operators are able to pay claims, the Act requires them either to qualify as a self-insurer or to purchase insurance to cover potential liability under the Act.  *See* 30 U.S.C. § 933(a); *see also* 20 C.F.R. part 726.

excise taxes on coal, 26 U.S.C. §§ 4121, 9501 — will pay a claim.  *See* 26 U.S.C. § 9501(d)(1);

*see also* 30 U.S.C. § 934(b)(1)(A)–(B) (setting forth that, where a benefits payment is made from

the Trust Fund, but it is later determined that the operator ought to have made the payment, the

operator is liable to the United State for repayment).  "The [district] director bears the burden of

proof that the responsible operator is potentially liable . . . ."  *Ark. Coals, Inc. v. Lawson*, 739

F.3d 309, 313 (6th Cir. 2014) (citing 20 C.F.R. § 725.495(b), (d)).

Proceedings before a district director culminate in a "proposed decision and order,"

which contains the district director's opinion as to whether the claimant is entitled to benefits and

which operator, if any, is liable for those benefits.  20 C.F.R. § 725.418.  A proposed decision

and order, however, does not bind the parties unless they voluntarily accept its terms or fail to

respond to it.  *See* 20 C.F.R. § 725.419.

If they disagree with the proposed decision and order, either the claimant or the

designated responsible mine operator can request a hearing before an ALJ.  33 U.S.C. § 919(c),

(d).  ALJ hearings are *de novo* proceedings; the ALJ is not bound by the district director's

findings.  *See* 20 C.F.R. § 725.455(a); *Pyro Mining Co. v. Slaton*, 879 F.2d 187, 190 (6th Cir.

1989).  If an ALJ hearing is requested, the designated responsible operator is not obligated to pay

benefits to the claimant until the ALJ issues an order finding it liable and the claimant entitled.

*See* 20 C.F.R. § 725.502(a).

If dissatisfied with an ALJ's decision, the claimant or the operator determined to be

responsible for paying the claim can seek review by a panel of DOL's Benefits Review Board.

*Id.* § 921(b).  Any party aggrieved by a decision of the Benefits Review Board can seek *en banc*

Board review or review in the federal court of appeals for the circuit in which the miner was

injured.  *Id.* § 921(c); 20 C.F.R. § 802.407(b).

## II.    FACTUAL BACKGROUND[4]

Arch Coal was formed in July 1997.  Compl. ¶ 26, ECF No. 1.  Over the following years, it expanded, acquiring mines and subsidiaries in the Western part of the United States.  *Id.* ¶ 27. Arch self-insured its own black lung benefits liability, as well as that of its subsidiaries, including three that are central to this suit: Hobet Mining, Inc. ("Hobet"), Apogee Coal Company ("Apogee") and Catenary Coal Company ("Catenary").  Compl. ¶¶ 28–29.  On December 31, 2005, Arch sold the three subsidiaries to Magnum Coal Company.  *Id.* ¶ 29.  In the transaction between Arch and Magnum, the parties agreed, according to Arch, that Magnum "would take over all of the liabilities of Apogee, Catenary and Hobet under the BLBA and Arch Coal was free and clear of those liabilities."  *Id.* ¶ 30.

In 2007, Patriot was created as a spin-off from Peabody Energy Corporation.  *Id.* ¶ 31. Patriot acquired Magnum — the owner of the former Arch subsidiaries, Hobet, Apogee, and Catenary — the next year.  *Id.* ¶ 32.  Like Arch, Patriot was authorized to self-insure its black lung benefits liability.  *Id.* ¶ 34.  In order to self-insure, Patriot was required by the Department of Labor to post substantial cash assets, which, Arch avers on information and belief, "covered all of Patriot's BLBA liability, past, present and future, including the liabilities of Magnum and its predecessor companies."  *Id.* ¶ 35.

Patriot and many of its wholly-owned subsidiaries, including Magnum, filed Chapter 11 reorganization petitions in 2012 and again in 2015.  *Id.* ¶¶ 36–37.  In the more recent reorganization, Patriot sold most of its assets to Blackhawk Mining, LLC.  *Id.* ¶ 37.  The

---

[4] The following factual recitation relies upon the allegations of the Complaint, which are assumed to be true on a motion to dismiss.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 589 (2007).

Bankruptcy Court approved Patriot's reorganization plan and ordered that Blackhawk would not have to assume Patriot's liabilities under the BLBA.  *Id.* ¶¶ 38–42.

The Department of Labor issued the Bulletin in November 2015 to "provide guidance for district office staff in adjudicating claims in which the miner's last coal-mine employment of at least one year was with one of the 50 subsidiary companies that have been affected by the Patriot Coal Corporation bankruptcy."  Bulletin No. 16-01 at 1; *see also* Compl. ¶ 43.  Among those 50 are Hobet, Apogee, and Catenary.  Bulletin No. 16-01 at 3.  As relevant here, the Bulletin directs that, for claimants who last worked for one of those three subsidiaries *prior* to January 1, 2006 — that is, while Arch's self-insurance program covered the subsidiaries and *before* Arch sold the subsidiaries to Magnum — commercial coverage must be identified first.  *Id.*  However, if no such policy covered the claimant, the Bulletin requires staff to treat the claim as self-insured through Arch and to direct notice of the claim accordingly.  Since issuing Bulletin No. 16-01, DOL has notified Arch of potential liability for at least seventy claims "that were included in Patriot's self-insurance authorization."  Compl. ¶ 57.  Because of administrative deadlines for objecting to designation as the responsible operator and for defending a claim on the merits, Arch says it has been required to hire counsel and defend the claims.  *Id.* ¶¶ 58–59 (citing 20 C.F.R. §§ 725.408, 725.410, 725.412).

Although, at bottom, Arch's core grievance is that it is being asked to pay claims that it believes should be attributed to Patriot, Arch includes four counts in its Complaint.  First, Arch alleges Bulletin No. 16-01 "effectively amends the Department of Labor's regulations" and that it should have exercised notice-and-comment rulemaking to do so.  *Id.* ¶¶ 61, 67.  In Count II, Arch alleges that the Bulletin is impermissibly retroactive.  *See Id.* ¶ 74.  In Count III, Arch contends that the Bulletin violated the BLBA's rules for determining successor liability.  *See Id.*

¶¶ 80–86 (citing 30 U.S.C. § 932(i)(1), (3)).  Finally, in Count IV, Arch alleges that Defendants violated a duty to apply Patriot's self-insurance to the claims here at issue.  *Id.* ¶¶ 87–97.  In its prayer for relief, Arch seeks a declaratory judgment and a permanent injunction.  *Id.* at 22–23.

Defendants now move to dismiss because the Court lacks subject matter jurisdiction and because Plaintiff has failed to state a claim upon which relief can be granted.

## ARGUMENT

## I. EXCLUSIVE JURISDICTION OVER QUESTIONS "IN RESPECT OF A CLAIM" LIES IN THE FEDERAL COURTS OF APPEALS.

Where Congress creates a "special statutory review scheme . . . 'it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.'"  *Jarkesy*, 803 F.3d at 15 (quoting *City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C. Cir. 1979)).  In *Thunder Basin*, 510 U.S. 200, the Supreme Court established a two-part framework for determining whether Congress intended to preclude initial review in the district court.  First, courts look to whether Congress's intent is "fairly discernable" in the statute's "text, structure, and purpose."  *Elgin*, 132 S. Ct. at 2133 (citing *Thunder Basin*, 510 U.S. at 207).  That inquiry does *not* require "absolute clarity."  *Hill v. Sec. & Exch. Comm'n*, — F.3d —, —, No. 15-12831, 2016 WL 3361478, at *8 (11th Cir. June 17, 2016) (addressing same question, and reaching same conclusion, as *Jarkesy*).  Second, courts are to ask whether "the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'"  *Jarkesy*, 803 F.3d at 15 (quoting *Thunder Basin*, 510 U.S. at 212); *see also Elgin*, 132 S. Ct. at 2132–33; *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010).  As the Third and Sixth Circuits have already concluded with respect to the BLBA, *see Louisville & Nashville R.R. Co. v. Donovan*, 713 F.2d 1243, 1245 (6th Cir. 1983); *Comp.*

*Dep't of Dist. Five, United Mine Workers of Am. v. Marshall*, 667 F.2d 336 (3d Cir. 1981),[5]

Congress intended the statutory scheme to be exclusive.  Plaintiff's Complaint should therefore

be dismissed for lack of subject matter jurisdiction.

> A.     It Is Fairly Discernable From the Statutory Scheme That Congress Intended to Make the Black Lung Benefits Act's Remedial Scheme Exclusive.

In *Thunder Basin*, the Supreme Court was asked whether the administrative scheme set

forth in the Federal Mine Safety and Health Amendments Act of 1977 precluded district courts

from exercising subject matter jurisdiction over a challenge to the statute itself.  That act set forth

that on statutorily mandated safety inspections by the Labor Department, both the mine operators

and the miners could separately select representatives to accompany DOL inspectors.  510 U.S.

at 202–04.  Miners chose two union employees, who did not work for the mine, and the mine

operator objected.  *Id.* at 204–05.  The operator complained to the Mine Safety and Health

Administration but was told to post the names of the two union-affiliated representatives, as the

Act required.  *Id.*  Instead of doing so, the mine operator filed suit in federal district court, asking

for pre-enforcement injunctive relief, before the assessment of any civil penalties or other

sanctions by DOL.

The Supreme Court concluded that the Mine Act stripped the district court of jurisdiction.

*Id.* at 207.  Under the Mine Act, a party is permitted to review of a civil penalty assessment by an

ALJ and can appeal an ALJ's decision to the Federal Mine Safety and Health Review

---

[5] Moreover, citing *Thunder Basin*, a Bankruptcy Court has held that "Congress gave [DOL] exclusive jurisdiction over adjudications of operator liability under the Black Lung Benefits Act."  *In re Blue Diamond Coal Co.*, 163 B.R. 798, 807 (Bankr. E.D. Tenn. 1994).  Courts have also held that a prior version of 33 U.S.C. § 921, which *did* allow for district court review, was "the exclusive method of securing judicial relief."  *Czaplicki v. Vessel "Ss Hoegh Silvercloud"*, 223 F.2d 189, 191 (2d Cir. 1955), *rev'd on other grounds sub nom. Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525 (1956); *Lacomastic Corp. v. Parker*, 54 F. Supp. 138, 140 (D. Md. 1944) (explaining that 33 U.S.C. § 921(b) is "the only method of review authorized by the Act. It is exclusive.").

Commission.  *Thunder Basin*, 510 U.S. at 207–28.  Procedures before the Commission are governed by a well-defined set of rules: review is *de novo*, the Commission is empowered to grant temporary relief pending review, and under certain circumstances the Commission is required to expedite review.  *Id.* at 208.  Following an adverse decision by the Commission, mine operators have the opportunity to appeal to the federal court of appeals.  *Id.* at 208.  The Court concluded that the Mine Act's structure, as confirmed by its history, made clear that Congress intended to preclude district court jurisdiction.  *Id.* at 208–09.

The D.C. Circuit in *Jarkesy* applied *Thunder Basin* in a case involving alleged securities violations and concluded that "[t]he securities laws contain an equally comprehensive structure for the adjudication of securities violations in administrative proceedings."  803 F.3d at 16.  In *Jarkesy*, an individual aggrieved by an SEC proceeding had the opportunity to seek review in a federal court of appeals, which was generally constrained to consider only arguments made before the Commission.  The relevant statute — the Exchange Act — "specifie[d] the standard of review for the Commission's factual findings; the process for seeking a stay of the Commission's order; and the process for the court to remand to the agency to 'adduce additional evidence.'"  *Id.* at 16–17 (internal citations omitted).  The court thus concluded that, because Congress had set forth the remedial scheme in "'painstaking detail' . . . 'it [was] fairly discernible that Congress intended to deny [aggrieved respondents] an additional avenue of review in district court.'"  *Id.* at 17 (quoting *Elgin*, 132 S. Ct. at 2134).

So here.  "Congress has provided an elaborate administrative structure and review process for the determination of claims eligibility and operator liability."  *Youghiogheny & Ohio Coal Co. v. Vahalik*, 970 F.2d 161, 162 (6th Cir. 1992).  Specifically, a District Director in the Office of Workers' Compensation Programs is empowered, in the first instance, to "hear and

10

determine all questions in respect of such claim," pursuant to a provision of the Longshore Act incorporated into the BLBA, 33 U.S.C. § 919; *see also Roberts v. Sea-Land Servs., Inc.*, 132 S. Ct. 1350, 1354–55 (2012).  "'[T]he claim' referenced in § 919 concerns a claimant's 'eligibility for some or all of the compensation sought or granted.'"  *Sea B Mining Co. v. Dir., OWCP*, 45 F.3d 851, 854–55 (4th Cir. 1995); *see also BethEnergy Mines, Inc. v. Dir., OWCP*, 32 F.3d 843, 847 (3d Cir. 1994).  Questions concerning "underlying operator liability" are quintessentially "in respect of a claim."  *Sea B*, 45 F.3d at 855.

As indicated above, *see supra* pp. 4–5, a district director makes the initial determination as to whether a claimant is eligible for benefits and which employer will be required to pay, *Nat'l Mining Ass'n*, 292 F.3d at 854 (citing 20 C.F.R. §§ 725.301–725.423), but either party can request a hearing before an ALJ, 33 U.S.C. §§ 919(c), (d); 20 C.F.R. §§ 725.450–725.480. Hearings are to abide by provisions of 5 U.S.C. §554.  33 U.S.C. § 919(d).  As expressly permitted by statute, 30 U.S.C. § 932(a), DOL has promulgated regulations to further govern such hearings, providing for, *inter alia*, a right to notice of a hearing, 20 C.F.R. § 725.453, rules of evidence, *id.* §§ 725.455(b), 725.456, and for the scope of what may be reviewed, *id.* § 725.463.  *See generally id.* § 725.450–725.483.  Following a hearing, an appeal can be taken to the Department of Labor's Benefits Review Board, which is "authorized to hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under this chapter and the extensions thereof."  33 U.S.C. § 921(b)(3); *see also* 20 C.F.R. § 725.481.  The Benefits Review Board conducts record review and must defer to factual findings "if supported by substantial evidence in the record considered as a whole."  33 U.S.C. § 921(b)(3); *see also* 20 C.F.R. § 802.301.  A party aggrieved by a Board determination can then appeal to the appropriate court of appeals, which then has jurisdiction to

affirm, modify, or set aside, in whole or in part, a Benefits Review Board order.  33 U.S.C. § 921(c); *see also* 20 C.F.R. § 725.482.  Both the Board and the court of appeals can stay an order awarding compensation, pending its review, in the event that irreparable injury would otherwise result.  20 C.F.R. §§ 725.482, 802.105.

This is precisely the sort of "painstaking detail" that the Court in *Thunder Basin* found sufficient to preclude initial district court review.[6]  Like the scheme at issue there, as well as those under review in *Jarkesy* and *Elgin*, "the statutory review scheme . . . has a familiar structure: agency action, then review before an administrative law judge, then review by a higher agency board or commission, then finally judicial review."  *Bombardier, Inc. v. U.S. Dep't of Labor*, 145 F. Supp. 3d 21, 34 (D.D.C. 2015); *see also Kreschollek v. S. Stevedoring Co.*, 78 F.3d 868, 872 (3d Cir. 1996) ("Certainly, the review scheme provided in the Longshore Act is comparable in its comprehensiveness to that of the Mine Act.").

What is more, here, as in *Elgin*, where the Court held that the Civil Service Reform Act set forth an exclusive structure for judicial review, 132 S. Ct. at 2134–35, the remedial scheme provides for district court review under *other* circumstances.  *See Kreschollek*, 78 F.3d at 872 ("The Longshore Act, like the Mine Act construed in *Thunder Basin*, confers jurisdiction in the district court only in limited circumstances not applicable here.").  Under 33 U.S.C. § 921(d), a

---

[6] To be sure, in both *Thunder Basin* and *Jarkesy*, the statutory scheme at issue expressly granted the court of appeals "exclusive" jurisdiction.  *See Thunder Basin*, 510 U.S. at 208; *Jarkesy*, 803 F.3d at 16.  However, as the Supreme Court has instructed, no special significance ought to be attached to the word "exclusive." Congress "has enacted a specific statutory scheme for obtaining review, and where Congress has directed such a procedure . . . the doctrine of exhaustion of administrative remedies comes into play and requires that the statutory mode of review be adhered to notwithstanding the absence of an express statutory command of exclusiveness."  *Whitney Nat'l Bank in Jefferson Par. v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 422 (1965); *see also Maxon Marine, Inc. v. Dir., OWCP*, 39 F.3d 144, 146 (7th Cir. 1994) (Posner, C.J.) ("When a statute specifies a procedure for obtaining judicial review of a federal agency's actions, that procedure normally is exclusive, even if the statute does not say that the procedure is exclusive.").

provision of the Longshore Act applicable in BLBA cases, the district court can be asked to enforce a compensation order with which the responsible operator has not complied.  *See also Thompson v. Potashnick Constr. Co.*, 812 F.2d 574, 576 (9th Cir. 1987) (explaining that "[t]he role of the United States District Courts in [the Longshore Act] scheme is limited," as, "[u]nlike the BRB and court of appeals, the district court has no jurisdiction over the merits of the litigation" (internal citations omitted)).  Additionally, 30 U.S.C. § 934(b)(4)(A) allows the Secretary of Labor to ask the district court to enforce a lien against a responsible operator who has failed to reimburse the Fund.  Those provisions "demonstrate[] that Congress knew how to provide alternative forums for judicial review based on the nature of an employee's claim." *Elgin*, 132 S. Ct. at 2134.  That it "declined to include an exemption from [administrative and court of appeals] review for challenges [like Plaintiff's] indicates that Congress intended no such exception."  *Id.* at 2134–35; *see also Bombardier*, 145 F. Supp. 3d at 33 (emphasizing that statutory scheme set forth two specific opportunities for district court jurisdiction in concluding that district courts were barred from considering other challenges under the relevant statute).

The history and purpose of the BLBA remedial scheme likewise evince Congress's desire to foreclose initial district court review.  Jurisdiction to review benefits awards originally *did* reside in the district court, but in 1972, Congress amended the Longshore Act and created the Benefits Review Board "as a single appellate body replacing the various district courts to which appeal had previously been available."  *Comp. Dep't*, 667 F.2d at 341 (citing *Krolick Contracting Corp. v. Benefits Review Bd.*, 558 F.2d 685, 687 (3d Cir. 1977)); *see also Dir., OWCP v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 138 (1995) (Ginsburg, J., concurring in the judgment) (summarizing 1972 amendments to the statute). "The amendments thus completely eliminated the role of the District Courts in the claims process," granting the

13

Benefits Review Board "a review function identical to that which the District Courts performed prior to the 1972 amendments." *Kalaris v. Donovan*, 697 F.2d 376, 382 (D.C. Cir. 1983). Second, and "[e]ven more telling, Congress rejected a proposed section in the Black Lung Benefits Reform Act of 1977 which would have allowed claimants to seek review of benefits determinations in the district courts." *Comp. Dep't*, 667 F.2d at 342 (citing H.R. Rep. No. 95-864, at 22–23 (1978) (Conf. Rep.)). Congress thus had an opportunity to approve of suits like this one, and it declined to do so. In the face of such a clear historical record, Plaintiff cannot credibly claim that it was anything other than Congress's express desire to vest the federal courts of appeals with exclusive jurisdiction to review Black Lung benefits determinations.

> **B.** **Plaintiff's Claims Are "of the Type" Congress Intended to Channel to the Administrative Scheme and, Ultimately, a Court of Appeals.**

Plaintiff's claims are also "of the type Congress intended to be reviewed" administratively with possible appeal to a federal court of appeals. *Jarkesy*, 803 F.3d at 15 (quoting *Thunder Basin*, 510 U.S. at 212). "To unsettle [the] presumption of initial administrative review — made apparent by the structure of the organic statute — requires a strong countervailing rationale." *Id*. at 17 (quoting *E. Bridge, LLC v. Chao*, 320 F.3d 84, 89 (1st Cir. 2003)). In considering whether a party's "claims present such a rationale," courts are to consider three factors: whether "a finding of preclusion could foreclose all meaningful judicial review; if the suit is wholly collateral to a statute's review provisions; and if the claims are outside the agency's expertise." *Id*. (quoting *Free Enter.*, 561 U.S. at 489).

Here, none of the three factors weighs in favor of unsettling the presumption that Plaintiff's claims should first be considered administratively, and in fact each strongly supports Defendants' position. Indeed, although Arch couches its claims in familiar APA terms, arguing, for example, that DOL failed to comply with the APA's rulemaking procedures, *see* Compl. ¶¶

60–72, the Complaint makes abundantly clear that what Arch ultimately seeks is a determination that it is not the operator responsible for certain benefits claims, *see, e.g.*, *id.* ¶¶ 72 ("Arch Coal further seeks a permanent injunction prohibiting the Department of Labor and Secretary of Labor from . . . imposing on Arch Coal, Patriot's liability for the black lung claims described herein."). That is precisely the sort of dispute the administrative process was designed to handle.

      1.     *The BLBA Claims Process Allows for Meaningful Judicial Review of Arch's Claims.*

It is plainly within the purview of an ALJ, the Benefits Review Board, and the federal courts of appeals to determine whether Arch is in fact the operator responsible for the disputed claims. True enough, District Directors make such decisions in the first instance and may be bound by the Bulletin in doing so. But subsequent reviewing entities need not accept a District Director's determination and can revisit whether Arch is in fact the responsible operator.[7] This was likewise the case in *Compensation Department*, where although the Office of Workers' Compensation Programs was required, under certain circumstances, to accept a radiologist's interpretation of an x-ray, neither an ALJ nor the Benefits Review Board was similarly bound. *Comp. Dep't*, 667 F.2d at 339. The court concluded that district court litigation was foreclosed. *Id.* at 340–44; *see also Nat'l Mining Ass'n*, 292 F.3d at 858 (explaining same).

---

[7] On its face, the bulletin is directed only to personnel in the Office of Workers' Compensation Programs who are involved in initial benefits determinations. After that initial decision, parties may request a *de novo* hearing before an ALJ, who is not bound by the bulletin, and doing so relieves a responsible operator from having to commence benefit payments. *See* 20 C.F.R. § 725.502(a)(1)–(2). Arch states in the Complaint that after the District Director's responsible operator determination, "an ALJ has no choice but to follow th[at] designation." Compl. ¶ 49 (citing 20 C.F.R. § 725.465(d)). Not so. The regulations do not prevent an ALJ from reversing the District Director's responsible operator determination. Rather, the regulations simply prevent an ALJ from dismissing a designated operator, without the Director's consent, prior to a final determination of operator liability. The rule is designed to ensure that all necessary parties, including the designated operator, remain party to a claim, even while it is on appeal. *See* Rules Implementing the Federal Coal Mine Health & Safety Act of 1969, 65 Fed. Reg. 79,920, 80,004–05 (Dec. 20, 2000).

Moreover, for review to be meaningful, the precise nature of the relief available need not be identical to that which Plaintiff could obtain from this court.  In *Compensation Department*, for example, a union, on behalf of member miners, sought to enjoin the Secretary of Labor from rereading X-rays in the course of making benefits determinations.  667 F.2d at 343.  In support of its argument that the district court had jurisdiction over its claim, the union argued that the Benefits Review Board could not grant the injunctive relief that it sought.  *Id.*  Rejecting that contention, the Third Circuit reasoned that the Benefits Review Board clearly had the authority — which it had in the past exercised — to determine that the Secretary had misread the relevant statute and to remand so that the claim could be reassessed using the proper legal rubric.  *Id.* at 344.  The court was unmoved by the fact that "this [wa]s not precisely the relief that [the union] sought."  *Id.*  Moreover, the *Compensation Department* court noted that, even if there the Benefits Review Board had not indicated that it would provide plaintiff with the relief sought, the court of appeals would be in a position to do so.  *Id.*  The Supreme Court and the D.C. Circuit concluded similarly in *Elgin* and *Jarkesy*:[8] "so long as a court can eventually pass upon the challenge, limits on an agency's own ability to make definitive pronouncements about [the Bulletin's legality] do not preclude requiring the challenge to go through the administrative

---

[8] In *Jarkesy*, the D.C. Circuit devoted a significant portion of its opinion to distinguishing two cases.  *Jarkesy*, 803 F.3d at 20–21.  Those cases no more support district court review here than they did in *Jarkesy*; both cases involve extreme situations that are not in any way analogous to the circumstances here.  In the first case, *Free Enterprise Fund v. Public Company Accounting Oversight Board,* 561 U.S. 477 (2010), a party asserting a constitutional challenge was held to be entitled to district court review because it "would have needed to manufacture a dispute" and subject itself to enforcement in order to obtain administrative review, thereby risking severe punishment should its constitutional challenge fail.  *Jarkesy,* 803 F.3d at 20 (citing *Free Enter.*, 561 U.S. at 489–91).  Likewise, in the second case, *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), potential plaintiffs were held to be entitled to district court review because, to obtain administrative review, they would have had to voluntarily surrender themselves for deportation.  *Id.*.  Here, as in *Jarkesy*, no such affirmative (or perilous) action is required: Plaintiff's challenge arises out of pre-existing administrative proceedings.

16

route." *Jarkesy*, 803 F.3d at 18 (citing *Elgin*, 132 S. Ct. 2136–37).  As a result, whether or not an

ALJ or the Benefits Review Board could, as Plaintiff has essentially requested, invalidate the

Bulletin in its entirety is of no moment.

<div style="margin-left:2em">

2.    *Arch's Claims Cannot Possibly Be Described as "Wholly Collateral" to the BLBA's Review Scheme.*

</div>

As the court explained in *Bombardier*, "[a] suit is not 'wholly collateral' to a statute's

review provisions" simply because it "attacks the [agency's] decision to place [a party] in

administrative proceedings in the first place."  *Bombardier*, 145 F. Supp. 3d at 40 (quoting

*Jarkesy*, 803 F.3d at 22).  Nor are claims "wholly collateral to an administrative enforcement

scheme when they arise from agency actions taken in the course of that scheme."  *Id.* (citing

*Jarkesy*, 803 F.3d at 23–24).  And "a challenge to an administrative proceeding's validity is not

wholly collateral when it is actually the 'vehicle by which [the party] seeks to prevail in his

administrative proceeding.'"  *Id.* (quoting *Jarkesy*, 803 F.3d at 23).  Each of those three

illustrations of why a suit would not be "wholly collateral" applies here, neatly demonstrating

that, like Bombardier's challenge to "the Department's decision to subject [it] to [the statute's]

administrative proceedings in the first place," *id.*, Arch's claims are not wholly collateral.

Indeed, as explained above, Arch's ultimate goal is to avoid being tagged as the responsible

operator for claims it alleges should have been assessed to Patriot.  That is precisely the sort of

claim that can be worked out administratively.  In *Louisville & Nashville*, albeit a decision pre-

dating *Thunder Basin*, the Sixth Circuit found that railroad operators could not circumvent the

BLBA's administrative scheme to argue that the statute did not apply to them at all, a claim far

more attenuated than that pressed here by Arch.  *See* 713 F.2d at 1244.

The text of the Longshore Act provisions incorporated into the BLBA helps to

demonstrate that claims such as Arch's are not wholly collateral.  The Longshore Act grants the

<div style="text-align:center">17</div>

Office of Workers' Compensation Programs the authority to "hear and determine all questions in respect of [a] claim."  33 U.S.C. § 919(a).  Courts have explained that the language in § 919(a) removes from administrative jurisdiction only challenges that are "wholly unrelated to an underlying claim for compensation."  *Equitable Equip. Co. v. Dir., OWCP*, 191 F.3d 630, 633 (5th Cir. 1999); *see also Sea B*, 45 F.3d at 855 (explaining that a question in respect of a claim goes to "underlying liability").  Accordingly, "in respect of [a] claim" jurisdiction exists if "the disputed issue [is] essential to resolving the rights and liabilities of the claimant, the employer, and the insurer regarding the compensation claim under the relevant statutory law," as the court recognized in *Temporary Employment Services v. Trinity Marine Group, Inc.*, 261 F.3d 456, 463 (5th Cir. 2001).  There, the claim fell outside § 919(a) jurisdiction because it "d[id] *not* involve the claimant's entitlement to benefits or the question who, under the [statute], is responsible for paying those benefits."  *Id.*  Here, however, that is *exactly* the relevant question.

Several courts of appeals have held that district courts can entertain suits raising questions concerning the interest that a coal mine operator must pay when reimbursing the Fund, an indication of what a "wholly collateral" claim might look like.  *See Sea B*, 45 F.3d at 854–55; *Peabody Coal Co. v. Dir., OWCP*, 40 F.3d 906, 909 (7th Cir. 1994); *BethEnergy Mines*, 32 F.3d at 847–51; *Youghiogheny*, 970 F.2d at 163.  District court review could be proper in such cases because "questions of underlying coal mine operator liability regarding the claim itself have been resolved" already.  *Sea B*, 45 F.3d at 855.  All that is left is a question "concerning the time value of money."  *Id.*  In such cases, where "final eligibility and liability determinations are [already] made," courts might understandably conclude that "the benefits of agency expertise become irrelevant, and jurisdiction is vested in district courts for the enforcement of the agency orders." *Youghiogheny*, 970 F.2d at 162; *see also id.* at 163 (terming questions concerning "enforcement

of statutory liabilities and liens arising by operation of law . . . only collaterally related to the administrative process"). Such cases stand in stark contrast to those — like this one — requiring "determination of claims eligibility and operator liability," for which "Congress has provided an elaborate administrative structure and review process." *Id.* at 162.

Finally, two additional points made by the *Jarkesy* court in the course of analyzing the "wholly collateral" question warrant repeating here. First, the D.C. Circuit "has previously rejected similar attempts by respondents in agency proceedings 'to short-circuit the administrative process through the vehicle of a district court complaint.'" *Jarkesy*, 803 F.3d at 24 (quoting *Sturm, Ruger & Co., v. Chao*, 300 F.3d 867, 876 (D.C. Cir. 2002)). In each of those cases, as here, "[r]ather than allowing the statutory review process to run its course — a course that w[ould] eventually lead back to a court of appeals,' [Plaintiff] ha[d] 'sought to make an end run around that process by going directly to district court." *Id.* (quoting *Sturm*, 300 F.3d at 876). The court explained that its "obligation to respect the review process established by Congress bar[red it] from permitting [plaintiff] to make this end run, and require[d] dismissal of [the] district court complaint." *Id.* The same is true here.

Second, *Jarkesy* pointed out that "[c]ertain of [appellant's] challenges — namely, his non-delegation doctrine claim and his equal protection arguments — could be said to share another characteristic: if vindicated, the upshot (arguably) would be that [he] should not have been subjected to the administrative proceeding at all." *Id.* at 25. Swiftly rejecting that being subject to an administrative proceeding was in any way dispositive, the court explained that "[r]equiring Jarkesy to undergo the remainder of the proceeding, notwithstanding his threshold claim that it was wrongly initiated, aligns with how the law handles analogous claims in similar contexts." *Id.* (citing *Bebo v. SEC*, 799 F.3d 765, 774–75 (7th Cir. 2015), *cert. denied*, 136 S. Ct.

1500 (2016)).   That is, looking to how the Supreme Court and D.C. Circuit had handled similar arguments in the context of both civil enforcement and criminal prosecutions, the court reasoned that "the expense and annoyance of litigation is part of the social burden of living under government." *Id.* at 26 (quoting *Socal*, 449 U.S. at 244).   So too in this case: it makes no difference that Arch is potentially on the hook for some number of claims. *See, e.g.*, Compl. ¶ 57.   "The only independent harms [Arch] will face as a result of [its] continuing to undergo the [administrative] proceeding are the burdens abided by any respondent in an enforcement proceeding or any criminal defendant who must wait for vindication.   The judicial system tolerates those harms, and they are insufficient for [the court] to infer an exception to an otherwise exclusive scheme." *Jarkesy*, 803 F.3d at 28; *see also Maxon Marine*, 39 F.3d at 147 (explaining that, even where agency review takes longer than a would-be plaintiff would like, agency "delay is not a valid ground for bypassing the procedures established by Congress for obtaining judicial review of agency action, procedures that include a mandatory resort to such administrative remedies as remain open to the aggrieved party, unless those remedies are palpably inadequate . . . resulting in serious injustice").

3.      *Arch's Fundamental Claim That It Is Not Liable for Certain Claims Is Well Within the Agency's Expertise.*

Plaintiff's principal claim — that it is not the responsible operator and should not be tagged with liability for certain claims — plainly comes within the ambit of agency expertise. Indeed, such a determination "'require[s] interpretation of the parties' rights and duties' under the Act and its regulations, and therefore 'fall[s] squarely within the [administrative decisionmaker's] expertise.'" *Sturm, Ruger*, 300 F.3d at 874 (quoting *Thunder Basin*, 510 U.S. at 214).   Such questions "regularly arise in the course of its proceedings." *Jarkesy*, 803 F.3d at

28.[9]  To be sure, the ALJ and Benefits Review Board may have comparatively less experience deciding broadly stated APA claims, as Arch has advanced here.  But to focus on Arch's claim in that manner would "overlook the many threshold questions that may accompany [an APA] claim and to which the [ALJ and Benefits Review Board] can apply [their] expertise."  *Elgin*, 132 S. Ct. at 2140.  If either were to determine that Arch is not the responsible operator, it would become unnecessary to rule more broadly.

Further, in *Compensation Department*, in the course of holding that the BLBA administrative process was in fact exclusive, the court emphasized the agency's expertise, noting that district court review could undermine the goals of efficiency and consistency that Congress sought to achieve by vesting decision-making authority in an agency with specialized expertise:

> Allowing the BRB to pass initially upon important issues provides for a much greater likelihood of uniformity and effectiveness in the administration of the BLBA than would allowing actions to be brought in the various district courts throughout the country. . . . [I]f at every point in the administrative process at which a claimant . . . believed that the BLBA was not being followed in some respect, that claimant could file an action in district court for an injunction — rather than raise the alleged violation of the statute on administrative appeal — the resulting duplication of review and the disruption of orderly and uniform administrative interpretation could have an adverse effect on implementation of the BLBA.

---

[9] Examples abound.  *See, e.g.*, *William Tomasek, Sr., Claimant*, BRB No. 13-0422 BLA, 2014 WL 3388566, at *2 (Ben. Rev. Bd. June 4, 2014); *Deborah Ramey (Widow of Billy J. Ramey), Claimant-Respondent*, BRB No. 13-0070 BLA, 2013 WL 6408504, at *1 (Ben. Rev. Bd. Nov. 25, 2013); *Anna Victoria Ratliff (Widow of Kennard O. Ratliff), Claimant-Respondent*, BRB No. 11-0321 BLA, 2012 WL 423884, at *2 (Ben. Rev. Bd. Jan. 30, 2012); *Irene Slone (Widow of Ezra D. Slone), Claimant-Respondent*, BRB No. 01-0202 BLA, 2001 WL 36392198, at *1 (Ben. Rev. Bd. Nov. 29, 2001); *Tom Mix Pickett, Claimant-Respondent*, BRB No. 99-0202 BLA, 2000 WL 35927573, at *3 (Ben. Rev. Bd. June 30, 2000).  Numerous federal courts of appeals have also acknowledged that ALJs and the Benefits Review Board regularly determine which company is to pay black lung benefits.  *See, e.g.*, *Kentland Elkhorn Coal Corp. v. Hall*, 287 F.3d 555, 557 (6th Cir. 2002); *P.T. Mine Servs., Inc. v. Dir., OWCP*, 412 F. App'x 461, 464 (3d Cir. 2011); *Ark. Coals, Inc. v. Lawson*, 739 F.3d 309, 312 (6th Cir. 2014); *Va. Crews Coal Co. v. Dir., OWCP*, 894 F.2d 403 (4th Cir. 1990) (table); *William Bros. Inc. v. Pate*, 833 F.2d 261, 263 (11th Cir. 1987).

*Id.* at 342; *see also McKart v. United States*, 395 U.S. 185, 194 (1969) ("[I]t is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages.").

The exact same is true here.   Questions of operator liability regularly recur in administrative proceedings.[10] DOL has developed considerable expertise in addressing those issues, through its implementation of the BLBA claims review process.  It makes little sense to circumvent the specialized expertise that resides in the agency, and undermine the goal of orderly and uniform administration that Congress sought to achieve through it, by allowing entities potentially facing liability to come rushing to federal district court every time it looks like a decision could *initially* go against them.  As *Compensation Department* observed, "[t]here would have been little if any point in creating an entity such as the [Benefits Review Board] if it could be circumvented at will by the bringing of an action in a district court against the Secretary."  667 F.2d at 342.

\* \* \*

The principles that motivated the D.C. Circuit in *Jarkesy* to conclude that Congress intended to channel review through the administrative process apply with equal force here.  "The rationale underlying Congress's decision to create statutory schemes like the one before us is that 'coherence and economy are best served if all suits pertaining to designated agency decisions are

---

[10] The Benefits Review Board frequently reviews responsible operator determinations in cases where a bankruptcy has occurred.  *See, e.g.*, *Deloris J. Mullins (o/b/o & Widow of Turl Mullins), Claimant-Respondent*, BRB No. 14-0169 BLA, 2015 WL 1010102, at \*2–3 (Ben. Rev. Bd. Feb. 26, 2015); *Deborah Ramey*, 2013 WL 6408504, at \*5 n.4; *Clarice Howard (Widow of James Howard), Claimant-Respondent*, BRB No. 11-0111 BLA, 2011 WL 5508677, at \*1 (Ben. Rev. Bd. Oct. 24, 2011); *Ronald L. Lynch, Claimant-Petitioner*, BRB Nos. 10-0209 BLA and 10-0209 BLA-A, 2010 WL 8111398, at \*9–10 (Ben. Rev. Bd. Dec. 8, 2010); *Henry Lee Jude, Claimant-Respondent*, BRB No. 06-0659 BLA, 2007 WL 7629358, at \*3 (Ben. Rev. Bd. May 23, 2007).

segregated in particular courts.'"   *Jarkesy*, 803 F.3d at 29 (quoting *City of Rochester*, 603 F.2d at 936).   As was true there, permitting potentially responsible operators to "jump the gun" and come straight to this court "has comparatively little merit," as "[s]uch a system . . . would create substantial uncertainty about what sort of claims could properly be adjudicated outside the administrative scheme."   *Id.* at 30 (citing *Elgin*, 132 S. Ct. at 2135–36).   Given how neatly the rationale of *Jarkesy* fits this case, the Court should follow its lead and conclude that it lacks subject matter jurisdiction.

       C.    The D.C. Circuit's Decision in *National Mining Association* Does Not Compel a Contrary Result.

In *National Mining Association*, plaintiff brought suit to challenge a rulemaking and resulting regulations that broadly amended the procedures for adjudicating BLBA claims.   *See* 292 F.3d at 854–55.   The D.C. Circuit concluded that the district court could exercise jurisdiction over a "broad-scale attack" on the regulations, *id.* at 856, but the three considerations that motivated the court are not present here.

First, *National Mining Association* concerned a "generic" challenge to a regulation, *id.*; *see also Sturm, Ruger*, 300 F.3d at 875 (making same observation about *National Mining Association*).   The court explained that, unlike in *Thunder Basin*, *Compensation Department*, or *Louisville & Nashville*, DOL had "gain[ed] all of the law-declaring attributes of an APA notice-and-comment rulemaking."   292 F.3d at 858.   Not so here, where all that is at issue is a Bulletin that binds no one but District Directors.   *See Sturm, Ruger*, 300 F.3d at 875 (distinguishing *National Mining Association* on the ground that it involved a regulation, not "an attack on an

enforcement policy").[11]   And the challenge in this case is not generic — it is directly tied to specific claims.

Second, "and most important," according to the D.C. Circuit's later *Sturm, Ruger* decision, *National Mining Association* "was not a case in which the 'plaintiff sought to short-circuit the administrative process' through the vehicle of a district court complaint."  *Sturm, Ruger*, 300 F.3d at 876 (quoting *Nat'l Mining Ass'n*, 292 F.3d at 858).  Indeed, *National Mining Association* observed that what *Thunder Basin*, *Compensation Department*, and *Louisville & Nashville* had in common was just such an attempt to forestall an enforcement proceeding.  292 F.3d at 857–58.  In each, "there was no reason to believe that a [plaintiff's] legal position, if correct, could not be fully remedied through review in the Court of Appeals."  *Id.* at 858.  As set forth at length above, the same is true here.  *National Mining Association* does not disturb the proposition, and indeed can be read to reaffirm, that district court jurisdiction is improper where, as here, it appears plaintiff seeks merely to short-circuit administrative review.

Third, the *National Mining Association* court observed that "the regulations before us are challenged primarily on the ground that they are impermissibly retroactive" and that "[t]o determine whether that is true it is necessary to analyze carefully all of the regulations together as well as the entire rulemaking process, which would not be feasible in individual adjudications dealing with particular regulatory provisions."  *Id.* at 858.  For one thing, the court's analysis presupposes that "regulations" were at issue, which is not the case here.  *See id.*  In any event, although it is true that Arch has challenged the Bulletin as impermissibly retroactive, seeking to

---

[11] Of course, Plaintiff argues that Defendants here *should* have undertaken notice-and-comment rulemaking.  Leaving to the side for now that Plaintiff is wrong, the *National Mining Association* court placed particular emphasis on the fact that DOL has "chosen" to avail itself of the benefits of notice-and-comment rulemaking — presumably referring to *Chevron* deference — which Defendants plainly have not done here.  292 F.3d at 858.

hold an operator responsible for liabilities that were allegedly transferred through transactions years before, *see* Compl. ¶¶ 73–79, Arch has done so in the context of a narrow question — whether it is the responsible operator for specific claims — and thus here, unlike in *National Mining Association*, it would not be necessary for the court to undertake the holistic review contemplated there.[12]

## II.  PLAINTIFF HAS FAILED TO STATE A CLAIM BECAUSE THE AGENCY ACTION IT CHALLENGES IS NOT FINAL.

### A.  Plaintiff Does Not Challenge "Final Agency Action for Which There Is No Other Adequate Remedy," as Required by the APA.

The APA permits judicial review of agency action where it has been made reviewable by another statute — Plaintiff has not attempted to identify such a statute here, presumably because none exists — or where it is "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. As an initial matter, Plaintiff's claims cannot go forward because Plaintiff has another adequate remedy. *See Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009). That remedy, of course, is the administrative process described above. Until Plaintiff exhausts that process, judicial review is improper. *See Am. Rd. & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 81 (D.D.C. 2012) ("And if the statute providing the adequate remedy channels review to the courts of appeals, it eliminates the federal question jurisdiction that the district courts would otherwise enjoy."), *aff'd*, No. 12-5244, 2013 WL 599474 (D.C. Cir. Jan. 28,

---

[12] As a practical matter, Arch's retroactivity argument is a red herring, for once a claim goes beyond the District Director level, the Bulletin ceases to be binding, and the question before an ALJ, the Benefits Review Board, or a federal court of appeals would simply be: was Arch properly named the responsible operator? Moreover, the Benefits Review Board, at least, has "the power to declare invalid a regulation that is not consistent with the Black Lung Benefits Act," *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1119 (6th Cir. 1984); *see also Carozza v. U.S. Steel Corp.*, 727 F.2d 74, 77 (3d Cir. 1984) ("Thus we reject the contention of Carozza and the Office of Workers' Compensation Programs that the Board may not, in the first instance, decide the legal question of the validity of a regulation."), and so even if a retroactivity question lingered in this case, there is no reason to think that body could not rule appropriately.

2013); *see also Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417 (6th Cir. 2016) (appellate review is adequate remedy); *Dresser v. Meba Med. & Benefits Plan*, 628 F.3d 705, 711 (5th Cir. 2010) (same); *Bombardier*, 145 F. Supp. 3d at 44 (concluding that judicial review in federal court of appeals, following issuance of final agency order, was adequate remedy); *Van Allen v. U.S. Dep't of Veterans Affairs*, 925 F. Supp. 2d 119, 125–26 (D.D.C. 2013) (ruling that statutory review scheme that channeled claims against the Department of Veterans Affairs to Board of Veterans' Appeals, Court of Appeals for Veterans' Claims, and Federal Circuit was an adequate remedy).

Even were that not so, Plaintiff has not challenged final agency action.  As a general matter, "two conditions . . . must be satisfied for agency action to be 'final' . . . : First, the action must mark the consummation of the agency's decisionmaking process — it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).  "Therefore, prior to reaching the merits of a plaintiff's claims, a court must consider whether the agency's position is definitive and whether it has a 'direct and immediate effect' on the parties." *Hall v. Sebelius*, 689 F. Supp. 2d 10, 17 (D.D.C. 2009) (quoting *Indep. Petroleum Ass'n v. Babbitt,* 235 F.3d 588, 595–96 (D.C. Cir. 2001)).  Absent final agency action, Plaintiff's APA claims must be dismissed for failure to state a claim upon which relief can be granted. *Karst Envtl. Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1298 (D.C. Cir. 2007).

Even taking at face value that Plaintiff challenges the Bulletin, that document is not the consummation of the agency decisionmaking process and it does not determine legal rights or

obligations.    The Supreme Court's decision in *Socal*, 449 U.S. 232, well illustrates why the Bulletin is not final agency action.    There, the Federal Trade Commission ("FTC") issued a complaint alleging that it had reason to believe that several companies, including Standard Oil of California ("Socal"), had violated the Federal Trade Commission Act.    *Id.* at 234.    That complaint set in motion an adjudication before an ALJ.  *Id.* at 234–35.  Socal nevertheless filed suit in federal district court to challenge the FTC's "reason to believe" determination.  *Id.* at 235.

The Supreme Court held that the FTC issuing its complaint was not final agency action. *Id.* at 239.  Observing that the determination whether agency action is final is a "pragmatic" one, the Court explained that "the Commission's averment of 'reason to believe' that Socal was violating the Act [wa]s not a definitive statement of position."  *Id.* at 241.  Rather, it was "a threshold determination that further inquiry [wa]s warranted and that a complaint should initiate proceedings."  *Id.*  Put otherwise, that the complaint was a "final" determination that the FTC had "reason to believe" the law had been violated was not enough, because Socal still had an opportunity to "challenge the complaint and its charges" in a hearing at which it would be permitted to present evidence and testimony to an ALJ.  *Id.*  In the event it lost before the ALJ, Socal would be able to appeal to the full FTC, and if it lost there too, it had a right to judicial review.  *Id.*  All the while, even if the Commission had enjoined Socal from engaging in the challenged conduct, Socal would not have had to comply until final resolution of the judicial process.  *Id.*  In short, "the averment of reason to believe is a prerequisite to a definitive agency position on the question whether Socal violated the Act, but itself is a determination only that adjudicatory proceedings will commence."  *Id.*  The initiation of proceedings against it did not "ha[ve] any . . . legal or practical effect, except to impose upon Socal the burden of responding to the charges made against it," a burden which — as explained above with respect to jurisdictional

channeling — "is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action." *Id.* at 242.  The Supreme Court further noted that, whereas Socal would not face legal or practice consequences, "the effect of the judicial review sought by Socal is likely to be interference with the proper functioning of the agency and a burden for the courts. Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise." *Id.* (citing *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)).

The present case is on all fours with *Socal*.  The Bulletin and resulting notices of potential liability serve only to initiate agency adjudication.  Even if the District Director declares Arch the responsible operator, Arch can still request a hearing before the ALJ and appeal any adverse decisions to the Benefits Review Board and a federal court of appeals.  The request for a hearing before an ALJ would relieve Arch of having to commence paying any benefits it had been ordered to pay, and both the Benefits Review Board and the court of appeals could stay any obligation to make payments while proceedings in such forums took place.  20 C.F.R. § 725.502(a)(1)–(2).  Thus the only burden placed upon Arch by the Bulletin is that of having to engage in the administrative review process, and that is not enough to render the Bulletin final agency action.  As the *Bombardier* court explained: "when an agency acts by adjudication, as here, the finality analysis is often simpler: the agency action is not final while the adjudication is still pending."  145 F. Supp. 3d at 44 (citing *Socal*, 449 U.S. at 239–41).  There, the court ruled that, just as the Labor Department's failure to issue a final order on plaintiff's whistleblower complaint compelled the conclusion that *Thunder Basin* and its progeny barred plaintiff from circumventing the administrative review scheme, the same consideration indicated Plaintiff had not challenged final agency action.

Since *Socal*, it has been "firmly established that agency action is not final merely because it has the effect of requiring a party to participate in an agency proceeding." *Aluminum Co. of Am. v. United States*, 790 F.2d 938, 941 (D.C. Cir. 1986).  Consequently, courts have declined to find final agency action where a plaintiff challenges an administrative complaint or other document that initiates agency proceedings. *See Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 946 (D.C. Cir. 2012) (FDA warning letter that requested further information from potentially regulated entity was not final agency action); *Borg-Warner Protective Servs. Corp. v. EEOC*, 245 F.3d 831, 835–36 (D.C. Cir. 2001) (EEOC determination letter setting forth reasonable cause to believe violation had occurred was not final agency action because, "rather than initiating proceedings, it merely informed [an aggrieved individual] that he had a right to bring a complaint."); *Beverly Health & Rehab. Servs., Inc. v. Feinstein*, 103 F.3d 151, 154 (D.C. Cir. 1996) (no final agency action where plaintiff challenged NLRB complaint and was still entitled to a hearing, at which it would be able to present evidence and testimony to an ALJ, in order to rebut the charges against it); *DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*, 76 F.3d 1212, 1214–15 (D.C. Cir. 1996) (HUD official urging ALJ "to proceed with the administrative process" was "tentative, provisional, or contingent," not final (citations omitted)); *Peter Kiewit Sons' Co. v. U.S. Army Corps of Eng'rs*, 714 F.2d 163, 168 (D.C. Cir. 1983) (finding no final agency action where "proposed debarment notice merely served to initiate proceedings to consider whether debarment should be ordered"); *see also Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732 (D.C. Cir. 2003) (explaining that *Socal* "held that even the filing of an administrative complaint does not constitute final agency action," and thus that "the Commission's actions here, which are merely

investigatory and clearly fall short of filing an administrative complaint, are not final agency action").

In sum, the Bulletin that Arch challenges is merely an interlocutory step on the way to final agency action.  Arch may well be named the operator responsible for the claims it points to, but it will have the administrative process to push back on such a determination, or else it will be able to seek review in a federal court of appeals.  To be sure, Arch views the mere existence of administrative proceedings as a burden it would prefer to avoid.  *See* Compl. ¶¶ 59, 68.  "But the law is clear that 'practical consequences, such as the threat of having to defend [oneself] in an administrative hearing should the agency actually decide to pursue enforcement, are insufficient to bring an agency's conduct under our purview.'"  *Holistic Candlers*, 664 F.3d at 944 n.5 (quoting *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004)).  Of course, Arch might find a single APA suit easier than defending against numerous claims administratively.  But that would ignore that a single victory before an ALJ or the Benefits Review Board could "through preclusion principles, effectively carry the day."  *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734–35 (1998).

> B.      For the Same Reasons the Bulletin Is Not Final Agency Action, Plaintiff's Claims Are Unripe for Review.

If the Court determines that the Bulletin does not constitute final agency action, dismissal of Plaintiff's claims as unripe is also proper.  *See Pub. Citizen v. Office of U.S. Trade Representatives*, 970 F.2d 916, 921 (D.C. Cir. 1992) (explaining that action cannot be ripe if there has been no final agency action).  *Holistic Candlers*, 664 F.3d at 943 n.4 (similar); *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 648 F. Supp. 2d 140, 147 (D.D.C. 2009) (similar).  "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over

administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'"   *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–149 (1967)).

"Determining whether administrative action is ripe for judicial review requires [courts] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.* at 808.  The fitness prong asks "whether the issue is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Harris v. FAA*, 353 F.3d 1006, 1012 (D.C. Cir. 2004) (citation omitted).  Not only is this dispute not fit for review because there has been no final agency action, but the ultimate question Arch poses — whether it is the operator responsible for paying several dozen claims — can only be addressed if the administrative process runs its course and all pertinent factual questions are resolved.  Determinations of BLBA benefits eligibility and operator liability are claim-specific and fact-intensive.  They require consideration of issues such as whether a claimant is a miner as defined in the BLBA and whether a miner has qualifying pneumoconiosis. *See, e.g.,* 20 C.F.R. § 725.202(d) (conditions of miner entitlement).  Such issues can only be determined on an individual, case-by-case basis.  Any number of issues could defeat a claim to entitlement and Arch's liability for benefits without any need to consider the issues discussed in the Bulletin.  Thus, at this point, the Bulletin issues are remote and theoretical.  They are too speculative to be ripe for judicial review.  Yet Arch would have this court proceed to consider them, nonetheless.  The appropriate course, instead, is for all pertinent BLBA issues to be determined in individual claim proceedings before DOL.

As to hardship, as already discussed at length, the only potential consequence Arch faces at present is that it must engage in the administrative process, and "it is well settled that the mere 'burden of participating in further administrative and judicial proceedings does not constitute sufficient hardship' for purposes of the ripeness analysis." *Cohen v. United States*, 650 F.3d 717, 743 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (quoting *AT&T Corp. v. FCC*, 349 F.3d 692, 702 (D.C. Cir. 2003)).   The conclusion that this suit is not yet ripe finds strong support in the doctrine's underpinnings.   As the D.C. Circuit has explained:

> [D]eclining jurisdiction over a dispute while there is still time for the challenging party to "convince the agency to alter a tentative position" provides the agency "an opportunity to correct its own mistakes and to apply its expertise," potentially eliminating the need for (and costs of) judicial review.   Even if the challenger fails to persuade the agency, permitting the administrative process to reach its end can at least solidify or simplify the factual context and narrow the legal issues at play, allowing for more intelligent resolution of any remaining claims and avoiding inefficient and unnecessary "piecemeal review."   Put simply, the doctrine of prudential ripeness ensures that Article III courts make decisions only when they have to, and then, only once.

*Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012) (citations omitted).   Thus even if the Court were to conclude that the Bulletin is final, it should nevertheless dismiss the Complaint as unripe.   *Cf.   Nat'l Park Hosp. Ass'n*, 538 U.S. at 812 (concluding final agency action requirement was satisfied, as well as that issue was purely legal, but nevertheless holding challenge was unripe because courts would benefit from "further factual development").

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction or for failure to state a claim.

Dated:  August 5, 2016                    Respectfully submitted,

                                          BENJAMIN C. MIZER
                                          Principal Deputy Assistant Attorney General

                                          CHANNING D. PHILLIPS

32

U.S. Attorney for the District of Columbia

JUDRY L. SUBAR
Assistant Director, Federal Programs Branch

___*/s/ Bailey W. Heaps*_____
BAILEY W. HEAPS (CA Bar No. 295870)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530
Telephone: (202) 514-1280
Facsimile: (202) 616-8470
Bailey.W.Heaps@usdoj.gov

*Counsel for Defendants*