**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**ARCH COAL, INC.,**

**Plaintiff,**

**v.**

**EDWARD HUGLER, Acting Secretary of Labor,** [1] **and U.S. DEPARTMENT OF LABOR.**

**Defendants.**

**Civil Action No. 16-669 (JDB)**

**MEMORANDUM OPINION**

The Office of Workers' Compensation Programs within the Department of Labor is charged with determining the "Responsible Operator" liable for a worker's black lung benefits claim. The process has several steps, the first of which is the District Director's initial determination of the Responsible Operator. The Department issued a guidance document—Bulletin No. 16-01—instructing District Directors to make an initial determination that Arch Coal, Inc. (the plaintiff), is the Responsible Operator for certain miners who previously were employees of three subsidiaries that were once owned by Arch Coal but later were sold to a now-bankrupt company, Patriot Coal.

Arch Coal argues that this Bulletin is unlawful because it contradicts the Black Lung Benefits Act's liability rules, 30 U.S.C. § 932(i), because it is a rule that the Department did not promulgate in accordance with the Administrative Procedure Act, 5 U.S.C. § 553(b), because it violates the APA's prohibition on retroactive rulemaking, and because the Department has acted arbitrarily and capriciously by not following its own self-insurance regulations. The Department,

[1] Acting Secretary Edward Hugler has been substituted for former Secretary Thomas E. Perez per Federal Rule of Civil Procedure 25(d).

on the other hand, maintains that this Court has no jurisdiction because Congress has created an exclusive administrative adjudication process that can only be appealed to the circuit court. Alternately, it argues that Arch Coal has failed to state a claim because there is not yet a final agency action. [2] The Court will grant the Department's motion to dismiss for lack of jurisdiction and will not reach the Department's failure to state a claim argument.

## BACKGROUND

### I. STATUTORY AND REGULATORY BACKGROUND

The Black Lung Benefits Act, 30 U.S.C. § 901 et seq., "provid[es] benefits to coal miners who are totally disabled by pneumoconiosis, also known as black lung disease, and to the surviving dependents of miners who died of the disease." Nat'l Mining Ass'n v. Dep't of Labor, 292 F.3d 849, 854 (D.C. Cir. 2002) (per curiam). Black lung disease is a "severe, and frequently crippling, chronic respiratory impairment . . . caused by long-term inhalation of coal dust." Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 6 (1976).

Generally, a miner's most recent employer is responsible for paying claims to miners who become disabled or died due to employment in that operator's mine. See 20 C.F.R. § 725.494. The miner must have been employed by that operator for at least one year, and the operator must be capable of paying the claim. See id. §§ 725.494(c), (e), 725.495. The Department imposes various obligations on mine operators to ensure that they are able to pay these claims. An operator may choose to qualify as a self-insurer or it may purchase commercial insurance. See 30 U.S.C. §§ 932(b), 933(a). For a mine to self-insure, it must obtain Departmental approval and meet the

[2] On the merits, the Department asserts that the Bulletin only affects miners who were employees of Arch Coal and never were employees of Patriot Coal, because it only pertains to employees who last worked for one of the three subsidiaries before they were sold. See Bulletin No. 16-01 [ECF No. 10-2] at 3 (identifying employees who worked for a subsidiary before 2006); Def.'s Mot. to Dismiss [ECF No. 10-1] at 7. Thus, the Department argues, the Bulletin is consistent with the Department's regulations and standard practices for determining Responsible Operators. Because this argument goes to the merits the Court does not consider it.

Department's requirements—including posting a surety bond or other security—to guarantee that the mine operator can pay future liability. See id.; 20 C.F.R. §§ 725.606(a), 726.109, 726.115. When there is no operator able to pay the claim, or if the Responsible Operator fails to pay, the Black Lung Disability Trust Fund provides payment. 26 U.S.C. § 9501(d)(1); 30 U.S.C. § 934(b)(1)(A)–(B); see also Regulations Implementing the Federal Coal Mine Health & Safety Act of 1969, as Amended 65 Fed. Reg. 79,920, 79,924 (Dec. 20, 2000). The Trust Fund is administered by the Department, and financed by an excise tax on coal. See 26 U.S.C. §§ 4121, 9501.

The Act lays out a process for adjudicating miners' claims and determining the Responsible Operator. This adjudication process largely adopts the procedures outlined in the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950. See 30 U.S.C. § 932(a) (incorporating provisions of the Longshore Act into the BLBA). To seek benefits, a worker files a claim with the applicable District Director for the Office of Workers' Compensation Programs. See 33 U.S.C. § 919; 20 C.F.R. § 725.401. The District Director then investigates the claim and makes a preliminary determination of the miner's eligibility and of the Responsible Operator. See 20 C.F.R. §§ 725.401–23. These determinations are explained in a "proposed decision and order." Id. § 725.418. The claimant and Responsible Operator may then acquiesce to the proposed decision, or may request a hearing before an Administrative Law Judge. See id. § 725.419; 33 U.S.C. § 919(c), (d); see also 20 C.F.R. §§ 725.450–83 (detailing hearing procedures before the ALJ). If the parties request a hearing, the ALJ makes a de novo determination of the Responsible Operator's liability. See 20 C.F.R. § 725.455(a); Pyro Mining Co. v. Slaton, 879 F.2d 187, 190 (6th Cir. 1989). In that hearing, the District Director "bears the burden of proof that the responsible operator is potentially liable." Ark. Coals, Inc. v. Lawson, 739 F.3d 309, 313 (6th Cir. 2014)

(citing 20 C.F.R. § 725.495(b), (d)).

The parties may then seek review of the ALJ's decision by a panel of the Benefits Review Board. 33 U.S.C. § 921(b). The panel's decision can then be appealed to the Board en banc, or to a federal court of appeals. See id. §§ 921(b)(5), (c); 20 C.F.R. 802.407(b).

## II. Factual and Procedural Background

Arch Coal is a mining corporation that was formed in 1997. Compl. [ECF No. 1] ¶ 26. It received the Department's authorization to self-insure against its future black lung benefits liability. Id. ¶ 25, 28. Arch Coal's self-insurance covered the future liability of three wholly-owned subsidiaries: Hobet Mining, Inc., Apogee Coal Company, and Catenary Coal Company. See id. ¶¶ 28–29. In 2005, Arch Coal sold the three subsidiaries to Magnum Coal Company. Id. ¶ 29. According to Arch Coal, the purchase agreement stated that Magnum would assume all liability for the three subsidiaries. Id. ¶ 30. In 2008, another mining company, Patriot Coal, acquired the three subsidiaries, along with their liability for future black lung benefits claims. See id. ¶ 32. The Department approved Patriot Coal's self-insurance plan. Id. ¶¶ 34–35.

In May 2015, Patriot Coal declared bankruptcy (for the second time). Id. ¶¶ 36–37. The bankruptcy court approved the sale of the three subsidiaries to other companies in October 2015, but that sale did not transfer Patriot Coal's black lung benefits liability to the purchasers. See id. ¶¶ 38–40.

In November 2015, the Department issued Bulletin No. 16-01 to "provide guidance for district office staff in adjudicating claims in which the miner's last coal-mine employment of at least one year was with one of the 50 subsidiary companies that have been affected by the Patriot Coal Corporation bankruptcy." Bulletin No. 16-01 [ECF No. 10-2] at 1. The 50 subsidiaries include the three at issue here. See id. at 2–3. The Bulletin explains that the purchasers of Patriot

Coal's mining operations are not liable for future claims, "except for those miners who continue to work for" the purchasers. Id. at 1. The Bulletin notes that "Patriot was authorized to self-insure its federal black lung liabilities as well as the liabilities of its subsidiaries" in certain states, and also carried some commercial insurance. Id. at 1. The Bulletin therefore outlines "[p]rocedures for handling newly filed claims." Id. at 2. In relevant part, it states that, for the three subsidiaries at issue here, staff must "[d]etermine whether the claim is covered by Arch Coal's self-insurance or an Arch Coal commercial insurance policy." Id. at 3. "If commercial coverage can be identified," notice of the claim must be sent "to the appropriate carrier." Id. Where "no commercial insurance can be identified, and the miner's employment falls within a period of Arch Coal's self-insurance," which "generally requires that the miner last worked for the subsidiary before January 1, 2006," notice of the claim must be sent to Arch Coal. Id.

Pursuant to the Bulletin, District Directors around the country made preliminary determinations that Arch Coal was the Responsible Operator for numerous claims. Compl. ¶¶ 56–57. At the time the complaint was filed in April 2016, this was 70 claims; at oral argument in January 2017, Arch Coal updated this number to 175 claims. See id. ¶ 57. The District Directors' determinations required Arch Coal to appear in administrative proceedings to object to this designation and defend against the claims. Arch Coal estimates that defending against these claims costs approximately $10,000 per claim, on average. Id. ¶ 59.

In response to the District Directors' determinations, Arch Coal filed this action in April 2016. The Department then moved to dismiss. After full briefing, the Court held a hearing on January 26, 2017.

## LEGAL STANDARD

The government has moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. See Fed. R. Civ. P. 12(b)(1), (b)(6). "[I]n passing on a motion to dismiss . . . on the ground of lack of jurisdiction over the subject matter . . . , the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). Likewise, when considering a motion to dismiss for failure to state a claim, a court presumes the truth of the complaint's factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, when evaluating either grounds for dismissal, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. (internal quotation marks omitted) (failure to state a claim); Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (lack of subject matter jurisdiction). The court then asks whether the facts alleged suffice "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The party seeking to invoke the jurisdiction of the federal court bears the burden of establishing the court's jurisdiction. See U.S. Ecology, Inc. v. Dep't of the Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). But plaintiffs are not the only ones with jurisdictional responsibilities; the court also has an "affirmative obligation to ensure that it is acting within the scope of its . . . authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, "'plaintiff's factual allegations . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1350 (2d ed. 1987)). In addition to the complaint itself, the court may examine documents attached to or incorporated in the complaint, and matters subject to judicial notice. See Trudeau, 456 F.3d at 183; Settles v. U.S.

Parole Comm'n, 429 F.3d 1098, 1107 (D.C. Cir. 2005). Here, the Court will take judicial notice of Bulletin No. 16-01, which was referenced in the complaint.

**DISCUSSION**

The Department of Labor argues that this court lacks subject matter jurisdiction because the Black Lung Benefits Act assigns exclusive jurisdiction to the Department's administrative process and then the relevant federal court of appeals. Arch Coal agrees that the Act does require certain claims to proceed from the Department's administrative process straight to the court of appeals—and thus the district court would not have jurisdiction—but argues the challenges it raises here are not of that type.

It is well established that where Congress has created "a special statutory review scheme . . . 'it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.'" Jarkesy v. SEC, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting City of Rochester v. Bond, 603 F.2d 927, 931 (D.C. Cir. 1979)). Such a special statutory review scheme exists when "(i) such intent is 'fairly discernible in the statutory scheme' and (ii) the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'" Id. (quoting Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207, 212 (1994)); see also Elgin v. Dep't of Treasury, 132 S. Ct. 2126, 2132–33 (2012).

There can be no serious dispute at step one: Congress has undoubtedly created a special statutory review scheme for miners' claims under the Black Lung Benefits Act, and the intent that the review scheme be exclusive is "fairly discernable." Two Circuits have so held and no court has disagreed. See Louisville & Nashville R.R. Co. v. Donovan, 713 F.2d 1243, 1244 (6th Cir. 1983); Comp. Dep't of Dist. Five, United Mine Workers of Am. v. Marshall, 667 F.2d 336, 337 (3d Cir. 1981).

Moreover, the BLBA's claims adjudication scheme is nearly indistinguishable from the ones at issue in Jarkesy and Thunder Basin. In Thunder Basin, the Supreme Court explained that the Mine Safety and Health Administration investigates and sanctions a mine operator, who can then challenge the sanction before an ALJ, appeal the ALJ's decision to a Commission within the agency, and, finally, seek review in a federal court of appeals. 510 U.S. at 202–04, 207–08. In the scheme at issue in Jarkesy, the Securities and Exchange Commission initiated the sanction process, and the sanctioned entity could then seek review in the relevant appellate court. 803 F.3d at 16 (citing 15 U.S.C. §§ 78y(a), (c)). The review scheme at issue here contains the same features. As explained above, under the BLBA, the District Director makes an initial determination of the Responsible Operator, which the parties may then challenge through a full hearing before an ALJ, with an appeal to a panel of the Benefits Review Board, followed by an appeal to the board en banc or directly to a federal appellate court. See 33 U.S.C. §§ 919(c), 921(b), (c); 20 C.F.R. §§ 725.401, 725.455, 802.407(b). The BLBA therefore "contain[s] an equally comprehensive structure for the adjudication [of the Responsible Operator] in administrative proceedings" as did the structures at issue in Jarkesy and Thunder Basin. See Jarkesy, 803 F.3d at 16. "Given the painstaking detail with which the [BLBA] sets out the method for" miners and mine operators to adjudicate their claims, "it is fairly discernible that Congress intended to deny such [parties] an additional avenue of review in district court." See Elgin, 132 S. Ct. at 2134.

The much closer question is whether Arch Coal's claims are of the type that fall within the proper scope of this exclusive statutory review scheme. The Court concludes that Arch Coal's challenges to the Bulletin are within the scope of this review scheme because they are ultimately about whether Arch Coal is liable for certain miners' compensation claims—which is the core

issue that the agency adjudicates (i.e., who is the responsible operator?) through orders under this review structure.

There are some types of claims a plaintiff can make that are not "of the type Congress intended to be reviewed within [the] statutory structure." See Thunder Basin, 510 U.S. at 212. A claim falls outside of the administrative process's scope if it is "wholly collateral to a statute's review provisions," is "outside the agency's expertise," or if following the administrative process would "foreclose all meaningful judicial review." Free Enterprise Fund v. Public Co. Accounting Oversight Bd., 561 U.S. 477, 489 (2010) (internal quotation marks omitted) (quoting Thunder Basin, 510 U.S. at 212–13). Likewise, if a plaintiff must "bet the farm"—that is, unnecessarily undertake significant legal risks—to initiate an enforcement proceeding to "test[] the validity of the law," then the administrative process does not provide a "meaningful avenue of relief" and therefore such claims fall outside of its scope. Id. at 490–91 (internal quotation marks omitted) (firms would need to risk substantial monetary sanctions to initiate administrative process); see also McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 496–97 (1991) (undocumented immigrants would need to risk deportation to raise claim in administrative process). These considerations are not "distinct inputs into a strict mathematical formula. Rather, [they] are general guideposts useful for channeling the inquiry into whether the particular claims at issue fall outside an overarching congressional design." Jarkesy, 803 F.3d at 17.

A claim can also fall outside the scope of the administrative process if it is a challenge to a notice-and-comment rule. See Nat'l Mining, 292 F.3d at 856. In National Mining, the Department promulgated a regulation that changed many of the procedures for adjudicating miners' claims under the same statute at issue here. Id. at 854–55. The D.C. Circuit held that the plaintiffs' challenge to the rule was not of the type that Congress intended to be resolved through

the administrative scheme. Id. at 859. That was because, unlike the situation in Thunder Basin and subsequent cases, in National Mining the Department of Labor chose to issue a notice-and-comment rule and thereby "to gain all of the law-declaring attributes" of rulemaking—namely, that the rule had the force of law and would be entitled to judicial deference. See id. at 858. Moreover, the main issue raised in National Mining was one of retroactivity, and to determine whether the rule was retroactive, "it [was] necessary to analyze carefully all of the regulations together as well as the entire rulemaking process, which would not be feasible in individual adjudications." Id. In a later case where the D.C. Circuit reiterated these distinctions between National Mining, on the one hand, and Thunder Basin and Compensation Department, on the other, the court also emphasized that a plaintiff may not seek "to short-circuit the administrative process through the vehicle of a district court complaint." Sturm, Ruger & Co. v. Chao, 300 F.3d 867, 876 (D.C. Cir. 2002) (internal quotation marks omitted).

The fact that Arch Coal raises statutory claims—that the Bulletin violates the BLBA and the APA—does not indicate that these claims are outside of the scope of the administrative review scheme. For example, in Thunder Basin the Court held that the "statutory scheme of administrative review followed by judicial review in a federal appellate court precluded district court jurisdiction over a plaintiff's statutory and constitutional claims." Elgin, 132 S. Ct. at 2132 (citing Thunder Basin, 510 U.S. at 206) (federal employees raising constitutional challenge to their termination were within exclusive jurisdiction of agency and appeals court under Civil Service Reform Act); Louisville & Nashville R.R., 713 F.2d at 1244–45 (challenge to policy for determining Responsible Operators was within exclusive jurisdiction of administrative process and appeals court); Comp. Dep't of Dist. Five, United Mine Workers of Am., 667 F.2d at 339–40 (challenge to Department's initial policy and later "temporary instructions" for reviewing claimants' x-rays

was within exclusive jurisdiction of administrative process and appeals court). Claims arising under the APA are no exception to this general rule. See Jarkesy, 803 F.3d at 14, 22 (raising APA and constitutional challenges); Comp. Dep't of Dist. Five, United Mine Workers of Am., 667 F.2d at 339 n.7 (similar).

Arch Coal's challenge to the Bulletin is fundamentally about whether it is properly determined to be the "Responsible Operator" in the 175 compensation claims before the agency. Although Arch Coal disputes that characterization of its claims, see Pl.'s Opp'n [ECF No. 12] at 34 n.19, 37–38, its complaint belies the point when it identifies Arch Coal's injury as needing to defend against the compensation claims before the agency, Compl. ¶ 59. The Bulletin itself is also clear that it only pertains to orders regarding compensation claims. See Bulletin No. 16-01 at 1 (the Bulletin's "purpose" is to "provide guidance for district office staff in adjudicating claims" (emphasis added)). As National Mining explains, the administrative process is about orders (not rules), 292 F.3d at 856; moreover, orders are fundamentally about "underlying operator liability," Sea B. Mining Co. v. Office of Workers' Comp. Programs, 45 F.3d 851, 855 (4th Cir. 1995); see also 33 U.S.C. § 919; 20 C.F.R. §§ 725.301–423. Thus, Arch Coal's challenge here to the Bulletin is neither "wholly collateral to [the] statute's review provisions" nor "outside the agency's expertise." See Free Enterprise Fund, 561 U.S. at 489 (internal quotation marks omitted). Arch Coal's challenge, then, goes to the core of the issue that the administrative review process is designed to determine. See Comp. Dep't of Dist. Five, United Mine Workers of Am., 667 F.2d at 341–42 (emphasizing Department's expertise in claims adjudication).

Nor must Arch Coal "bet the farm" to challenge the Bulletin through the administrative review process. Unlike in Free Enterprise Fund and McNary—where the plaintiffs would have had to intentionally provoke enforcement proceedings that could lead to substantial fines or

deportation, respectively—Arch Coal is already in the midst of the enforcement proceedings: the District Directors have already made initial determinations that Arch Coal is the "Responsible Operator" for certain compensation claims, and Arch Coal can avail itself of the remaining stages of the review process to challenge that determination. Compare Compl. ¶ 57, with Free Enterprise Fund, 561 U.S. at 490, and McNary, 498 U.S. at 496–97.

Furthermore, the Bulletin is not a notice-and-comment rule. Unlike in National Mining, the Department here did not chose "to gain all of the law-declaring attributes of an APA notice-and-comment rulemaking." Nat'l Mining, 292 F.3d at 858. But Arch Coal argues that the Bulletin is a "de facto legislative rule" because it has the force of law. See Pl.'s Opp'n at 21–22. This, according to Arch Coal, means both that the Court has jurisdiction to hear this suit under National Mining, and that the Bulletin was unlawfully promulgated without following the APA's procedures, see 5 U.S.C. § 553(b). Arch Coal claims the Bulletin has the force of law because it contains mandatory language that binds the District Directors, and "if a document expresses a change in substantive law or policy . . . which the agency intends to make binding . . . the agency . . . must observe the APA's legislative rulemaking process." Gen. Elec. Co. v. EPA, 290 F.3d 377, 382–83 (D.C. Cir. 2002) (quoting Robert A. Anthony, Interpretive Rules, Policy Statements, Guidances, Manuals, and the Like—Should Federal Agencies Use Them to Bind the Public?, 41 Duke L.J. 1311, 1355 (1992)); see Bulletin No. 16-01 at 2 ("staff will do the following" (emphasis added)).

While there might be some de facto rules that a court would treat as notice-and-comment rules for the purpose of determining whether a challenge falls within the scope of an exclusive administrative scheme, the Bulletin is not one of them. Contrary to the plaintiff's arguments, the Bulletin does not have the force of law or have a legally cognizable immediate effect on Arch

Coal. It does contain mandatory language, as the government concedes, but that only binds the District Director. Regardless of the District Director's decision, both parties are entitled to a hearing before an ALJ, where the ALJ will make an independent determination de novo. See 33 U.S.C. § 919(c), (d); 20 C.F.R. § 725.455(a); Pyro Mining, 879 F.2d at 190. The hearings are governed by a complete set of rules providing Arch Coal with ample opportunity to be heard, present evidence, and make its argument before a decision is rendered. See 20 C.F.R. § 725.450–83. The Benefits Review Board then reviews de novo the ALJ's legal determinations and reviews for substantial evidence the ALJ's findings of fact. 20 C.F.R. § 802.301(a); Pyro Mining, 879 F.2d at 191.

Hence, a District Director's determination—mandated by the Bulletin—does not have the force of law in determining whether Arch Coal will ultimately be designated as the "Responsible Operator." At most, the Bulletin's only effect is to require Arch Coal to spend time and money litigating compensation claims before the agency. While time and money are real costs, "'the expense and annoyance of litigation is part of the social burden of living under government.'" Jarkesy, 803 F.3d at 26 (quoting FTC v. Standard Oil Co. of Cal., 449 U.S. 232, 244 (1980)). Such harm is "insufficient for [the court] to infer an exception to an otherwise exclusive scheme." Id. at 28.

Arch Coal also contends that the ALJ and the Benefits Review Board are actually bound by the District Director's determination under 20 C.F.R. § 725.465(b). This, Arch Coal believes, is further evidence that the Bulletin is a de facto legislative rule, and means that it cannot receive meaningful review of its claims before the agency. See Pl.'s Opp'n at 13–14. But Arch Coal misreads § 725.465(b). That section states that the ALJ "shall not dismiss the operator designated as the responsible operator by the district director, except upon motion or written agreement of the

Director." Id. This does not mean that the ALJ (or the Board) is bound by the Director's determination. Rather, as the Federal Register explains, this regulation deals with the logistics of adjudicating the claim: while the ALJ is not bound by the District Director's determination, the ALJ may not dismiss any party prior to a final determination on appeal. See Regulations Implementing the Federal Coal Mine Health & Safety Act of 1969, 65 Fed. Reg. 79,920, 80,004–05 (Dec. 20, 2000); see also E. Associated Coal Co. v. Office of Workers' Comp. Programs, 578 F. App'x 165, 172 (4th Cir. 2014) (characterizing § 725.465(b) as "ensur[ing] that the Director, as a party to the litigation, receives a complete adjudication of his interests" (internal quotation marks omitted)). Indeed, the government has provided myriad examples of cases in which the ALJ disagreed with the District Director, the Board disagreed with the ALJ, and the appeals court disagreed with the Board as to what entity was the Responsible Operator. See Def.'s Reply [ECF No. 14] at 8 nn.3–5. This element of Arch Coal's argument thus has no merit. [3]

Arch Coal next argues that, as was true in National Mining, this Court is better suited to "analyze carefully all of the regulations together as well as the entire rulemaking process, which would not be feasible in individual adjudications." Nat'l Mining, 292 F.3d at 858. Certainly there are many compensation claims at issue here (175, at Arch Coal's last count), and it might be more efficient to adjudicate those jointly in a district court rather than individually through administrative adjudications. But that is not the type of "feasibility" the D.C. Circuit referred to in National Mining. Rather, the court there was explaining that a district court is more competent

[3] Arch Coal submitted Agricultural Retailers Association v. Department of Labor, 837 F.3d 60 (D.C. Cir. 2016), as supplemental authority, asserting that it stands for the proposition that a Court must look to the substance of the agency action, not its name, to determine whether the action is functionally a notice-and-comment rule. See Not. of Supp. Auth. [ECF No. 16]. That case concerned whether a Memorandum issued by the Department was a "standard" or some other type of agency action, as defined the Occupational Health and Safety Act. While the analysis required by that act is somewhat different than the inquiry here, Agricultural Retailers is still instructive—however, it further supports the Court's conclusion. The functional effect of the Bulletin—regardless of what it is called—is only to require the District Director to make a certain initial determination regarding the Responsible Operator, which Arch Coal may then challenge through multiple layers of review.

to make an evaluation about whether a rule applies retroactively (and whether the statute authorizes retroactive application of a rule) than an agency is. See id. at 858–60. Determining whether a rule has a retroactive effect requires understanding the interaction of the new regulation with existing regulations, and how the new regulation affects substantive rights. See id. at 859. The National Mining court was following in a long line of precedent explaining that courts, rather than agencies, should generally determine whether a rule has retroactive effect. See id.; see, e.g., Nat'l Petrochemical & Refiners Ass'n v. EPA, 630 F.3d 145, 162–63 (D.C. Cir. 2010) (explaining that courts determine whether agency has authority to impose retroactive rule and whether rule has retroactive effect).

Here, although Arch Coal does argue that the Bulletin has an impermissibly retroactive effect, there is no reason why that claim cannot be first heard by the Department. There is nothing specific to Arch Coal's challenge that would require this Court to engage in the type of analysis for which it has particular experience distinct from that of the agency. See Free Enterprise Fund, 561 U.S. at 491. Rather, Arch Coal fundamentally claims that it is not the Responsible Operator under existing Department regulations. This is exactly the type of claim that the Department has expertise in, and that "Congress intended to be reviewed within [the] statutory structure." See Thunder Basin, 510 U.S. at 212. Moreover, in National Mining, the fact that the plaintiffs raised a retroactivity claim was one reason among several—most noticeably, the fact that the challenged policy was a notice-and-comment rule—that led the court to conclude that the challenge was outside of the administrative scheme's scope. See Nat'l Mining, 292 F.3d at 858. Here, in contrast, there are no considerations that support Arch Coal's view that its claims fall outside the exclusive jurisdiction of the BLBA's administrative scheme and the subsequent appellate court review.

Finally, Arch Coal argues that it cannot receive meaningful relief on Count IV through the administrative review scheme—and therefore Count IV falls outside of the scope of that scheme—because the administrative process does not permit discovery. Count IV of the complaint alleges that the Department has a duty to first apply Patriot's self-insurance assets to the compensation claims at issue, then if those assets are insufficient, to pay those claims out of the Black Lung Disability Trust Fund. See Compl. ¶ 89–92. Arch Coal alleges that the Department has "fail[ed] to follow its regulations" and has "breach[ed] . . . its agreements." Id. ¶¶ 94–95.

Arch Coal has not identified which regulations or agreements it believes the Department has breached. It does, however, seek a "declaration that the Department of Labor's imposition of new and unanticipated liabilities on Arch Coal is arbitrary, capricious, an abuse of discretion and not in accordance with law." Id. ¶ 96. This claim thus sounds in the APA's typical standard of review for an agency rulemaking or order. See 5 U.S.C. § 706(2)(A) (a court must "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). And as Arch Coal acknowledges in its brief, this is another way of getting at its core claim: that the Bulletin changes the Department's regulations on Responsible Operator determinations without going through notice and comment. See Pl.'s Opp'n at 5 ("the very heart of Plaintiff's suit" is the argument that "the Bulletin is a final and retroactive de facto legislative rule that was improperly imposed upon Plaintiff . . . without notice-and-comment rulemaking and in contravention of the APA and BLBA. Beyond that, nothing else matters."). Thus, Count IV is another version of Arch Coal's APA claim—which is, ultimately, an argument that it is not the "Responsible Operator."

Count IV, then, is precisely the type of claim the administrative review process was designed to handle. Arch Coal believes that Patriot Coal should be designated as the Responsible

Operator and that the Trust Fund should pay any claims that Patriot's assets cannot; the government, on the other hand, believes that Arch Coal is the Responsible Operator for the employees at issue. There is a review structure for assessing this determination.

Moreover, it is not clear what additional discovery Arch Coal would need to fairly present its claims to the Department and eventually to the court of appeals. Although the hearing procedures do not envision discovery of the type that occurs in the district court, the parties may take depositions or interrogatories. 20 C.F.R. § 725.458. Moreover, the District Director "bears the burden of proof that the responsible operator is potentially liable." Ark. Coals, 739 F.3d at 313; 20 C.F.R. § 725.495(b), (d). An operator also has the opportunity to introduce its own evidence. See 20 C.F.R. §§ 725.455–58. And once Arch Coal reaches the court of appeals, it will have the benefit of the full administrative record, which would provide the evidence needed to decide the issue raised: whether the District Directors' decisions that Arch Coal is the Responsible Operator for certain compensation claims was arbitrary and capricious or contrary to existing Departmental regulations. See Compl. ¶ 96; Jarkesy, 803 F.3d at 21–22. This is why generally a plaintiff is not entitled to discovery—beyond the administrative record—when raising an APA challenge to an agency action. See Comm. for Creative Non-Violence v. Lujan, 908 F.2d 992, 997 (D.C. Cir. 1990) (explaining rare exceptions when additional discovery is warranted) (citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420 (1971)). And, as the Jarkesy court noted, "should the record in the administrative proceeding prove inadequate to the court of appeals . . . that court 'always has the option' of 'remanding to the agency for further factual development.'" Jarkesy, 803 F.3d at 22 (quoting John Doe, Inc. v. Drug Enforcement Admin., 484 F.3d 561, 570 (D.C. Cir. 2007)). Thus, there is no reason why Arch Coal could not receive meaningful relief on Count IV through the Department's administrative process, and subsequent

appellate court review, despite that process's limited discovery procedures.

## CONCLUSION

For the reasons explained above, the Department's motion to dismiss for lack of subject matter jurisdiction will be granted. A separate order has been issued on this date.

/s/

JOHN D. BATES
United States District Judge

Dated: March 16, 2017